# United States Court of Appeals
## For the First Circuit

---

Nos. 02-1925
      02-1926

UNITED STATES OF AMERICA,

Appellee,

v.

MITCHELL WALL,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Howard, Circuit Judge.

---

Tina Schneider, by Appointment of the Court, for appellant.
Mitchell Wall on brief pro se.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief for appellee.

---

November 18, 2003

---

**COFFIN, <u>Senior Circuit Judge</u>.**  Appellant Mitchell Wall raises several challenges to his convictions and sentence following a pair of jury trials on drug offenses charged in two separate indictments, one alleging cocaine distribution resulting in a death and the other alleging a scheme to unlawfully obtain and distribute oxycodone.[1]  He claims, <u>inter</u> <u>alia</u>, that his Sixth Amendment right to counsel was violated by admission into evidence of a jailhouse conversation with a fellow inmate and that the restitution order in the oxycodone case was improper.  We affirm the court's judgments on all issues.

## I. Background

We briefly summarize certain background facts as the jury in the cocaine trial could have found them, elaborating further on the underlying events and the evidence presented only as necessary in our discussion of particular issues.

Early on the morning of September 4, 1999, Loretta Fortin was pronounced dead of an apparent drug overdose.  She and a number of other individuals, including appellant Wall, had been drinking and using various forms of cocaine through the night in Wall's apartment in Biddeford, Maine.  The previous afternoon, Fortin also had taken ten to fifteen Tylenol with codeine pills, and toxicology tests performed after her death showed low levels of Valium in her blood as well.  Others present at Wall's apartment that night

---

[1] The two cases were consolidated for appeal.

-2-

testified that Wall left the apartment twice to obtain cocaine, that Wall also bought cocaine with his own and others' money from two young men who came to the apartment,[2] and that on one occasion he injected Fortin with a cocaine mixture. At about 4 a.m., after announcing that she did not feel well, Fortin went outside for fresh air and, moments later, collapsed. Efforts to revive her failed, the police were called, and the others who had been present in the apartment dispersed. During a search of Wall's apartment later that afternoon, police officers found beer cans, syringes, spoons and other drug paraphernalia.

Wall subsequently was charged with distributing cocaine, the use of which resulted in the death of another, after having been convicted of a felony drug trafficking offense, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). At the same time, a separate three-count indictment was issued charging him with participating in a scheme to defraud Medicaid in connection with an alleged conspiracy to acquire and distribute oxycodone, also known as Oxycontin. See 18 U.S.C. § 1347, 21 U.S.C. §§ 846, 841(b)(1)(C). He was found guilty of all charges in both cases.

The government's evidence included testimony from a fellow inmate, Brian Griffin, who reported statements made to him by appellant when both were detained at the Cumberland County Jail in

---

[2] Wall denied that he brought cocaine back to the apartment and said that two teenagers from Old Orchard Beach came to his apartment and sold drugs to the group.

September 2000. Griffin was charged in a related oxycodone conspiracy and in May 2000 had signed a plea agreement requiring him to cooperate with the government. Griffin initiated conversation with appellant after hearing and recognizing Wall's name during a screening in the jail's medical unit. Despite their related criminal enterprises, Griffin had no previous direct contact with Wall and did not know him by sight. Wall unsuccessfully sought to suppress the statements that Griffin reported, including an admission by Wall that he had injected Fortin with cocaine.

On appeal, Wall renews his challenge to the admission of Griffin's testimony on their jailhouse conversations. He also asserts the following additional claims of error in the cocaine distribution case: (1) that the court improperly denied his motion for new trial based on new information that $115 in cash was not seized from his apartment, contrary to testimony of a government witness; (2) that the court improperly instructed the jury on causation in relation to Fortin's death; and (3) that the evidence was insufficient to establish that Fortin's death resulted from the use of cocaine that Wall distributed. Wall also contends that the court's restitution order in the oxycodone case erroneously assessed the full amount of the loss on him and instead should have specifically imposed joint and several liability with his co-defendants. In a pro se supplemental brief, he additionally

-4-

challenges the use of his prior convictions in setting his sentence.

For the reasons discussed below, we find no error in the court's disposition of either case.

## II. Discussion

### A. Jailhouse Statements

The Sixth Amendment bars the use at trial of incriminating statements that law enforcement officers "deliberately elicit[]" from a defendant outside counsel's presence once the right to counsel has attached. See Massiah v. United States, 377 U.S. 201, 206 (1964). Appellant argues that his statements to Griffin should have been excluded under this precedent because Griffin was acting as a government agent when he initiated the jailhouse conversations with Wall.[3]

We disagree that constitutional error occurred for the same reasons expressed by the district court in its thoughtful response to appellant's motion to suppress, in which the court fully considered both the relevant legal principles and the particular factual circumstances. We find it unnecessary to retread the same ground, and instead simply note here our accord with the district court's pertinent conclusions: that Griffin was acting in his own interest and not at the behest of the government when he engaged

---

[3] The two men conversed at the jail twice within about a week. The second conversation was more extended and included Wall's incriminating statements.

appellant in conversation; that the government neither deliberately created nor exploited circumstances that would lead to incriminating statements; and that the government did not "focus" Griffin's attention on appellant, see United States v. LaBare, 191 F.3d 60, 65 (1st Cir. 1999).  In short, the government played no role in the happenstance meeting between the two men, and nothing in the government's prior interactions with Griffin encouraged him to elicit information from Wall on the government's behalf.  To the contrary, Griffin had been told not to communicate with anyone involved in his case,[4] and the government agents believed (incorrectly) that a segregation order preventing such an opportunity was in effect.  In these circumstances, no Sixth Amendment violation occurred.

B. Motion for New Trial

Approximately three weeks after the conclusion of the cocaine trial, government counsel discovered that $115 in cash that had been admitted into evidence at appellant's trial was not, in fact, seized from his apartment, as a police officer had testified.  The cash instead had been found at a different apartment on the same street.  Defense counsel immediately was notified of the error.

---

[4] Although Griffin and Wall were charged in two separate oxycodone conspiracies, Griffin testified that he thought they were charged in the same scheme, and it is undisputed that Griffin was a participant in both conspiracies.  Thus, Griffin's decision to converse with Wall was in direct conflict with the government's instructions.

Wall shortly thereafter moved for a new trial, claiming that he was denied a fair trial because the government, in effect, used false evidence to obtain a conviction.[5]

In a February 2002 order, the district court denied the request for a new trial, finding that both the police officer and prosecutor had acted in good faith, albeit erroneously, in identifying Wall's apartment as the source of the money. The court further found that the currency "was of little significance, if any, on the ultimate questions of whether distribution of cocaine occurred and whether Defendant committed the acts necessary to constitute distribution." Consequently, the court found that the mistake did not undermine the jury's verdict.

To obtain a new trial based on newly discovered evidence subject to disclosure under Brady v. Maryland, 373 U.S. 83 (1963),[6] a defendant must show both that the evidence is material and that

---

[5] The $115 was the subject of two brief questions asked of a Biddeford police officer, who identified the money and said it was found in the living room of Wall's apartment. The primary reference to the currency occurred during the prosecutor's rebuttal, when she urged the jury to consider all of the evidence of drug distribution found in Wall's apartment:

> And there was money, remember there was $115 worth of money sitting [i]n Mitchell Wall's living room. Now the kids from Old Orchard were long gone. So think about what that money means.

[6] Under Brady, the government is required "to produce to defendants exculpatory and impeachment evidence that is in its custody, possession, and control," United States v. Josleyn, 206 F.3d 144, 151 (1st Cir. 2000).

there is a "reasonable probability" that it would produce an acquittal upon retrial. See United States v. Josleyn, 206 F.3d 144, 151 (1st Cir. 2000).[7] Appellate review of a district court's ruling on a motion for new trial is for manifest abuse of discretion only. Id. We find no such error here.

Wall's guilt or innocence rested on whether he distributed the cocaine that resulted in Fortin's death, not on his receipt or possession of cash. His role in providing cocaine to the others in his apartment that night was the subject of extensive other testimony and evidence. Three of those present – as well as Wall himself – testified that he obtained cocaine for the group to use.[8]

---

[7] These two elements are really two sides of the same coin. As we noted in Josleyn, 206 F.3d at 151, evidence is "material" in the Brady context "only if there is a 'reasonable probability' that the evidence would have changed the result."

A defendant also must demonstrate that the evidence was unknown or unavailable at the time of trial and that the failure to discover the evidence was not due to a lack of diligence on the defendant's part. Id. It is undisputed that these elements were satisfied in this case.

[8] The testimony linked Wall to the acquisition, preparation and injection of the cocaine used by the group. For example, Debra Leach testified that Wall left the apartment at one point, after Armand Fortier gave him $50, and returned with a baggy of cocaine. According to her testimony, he later took money from Richard Powers, left briefly and again returned with cocaine in a baggy. Fortier, who testified that he gave Wall money more than once that night to buy cocaine, recalled seeing Wall prepare cocaine powder so that it could be smoked and watched Wall inject himself with the drug. Leach stated that she gave an injection of cocaine to Fortin, and then Wall mixed more of the drug and injected Fortin with it himself. Leach also testified that Wall bought cocaine from two teenagers who came into the apartment late that night. Powers testified that Wall prepared cocaine for him and Fortier

-8-

In addition, drug paraphernalia with cocaine residue was found in Wall's apartment, corroborating the witness testimony.

We therefore agree with the district court that, in the context of the overall case, the evidence concerning the $115 was of minor significance. Although it allowed the prosecutor to suggest that Wall provided the drugs since he had an accumulation of cash, there was much testimony about the exchange of cash for cocaine at Wall's apartment. That the particular $115 shown to the jury was in fact seized elsewhere was thus of little consequence. In light of the extensive, much more damaging direct evidence of Wall's role in securing cocaine, the district court did not err in concluding that the evidence concerning the $115 was not material to the jury's verdict.

Likewise, we reject appellant's suggestion that knowledge of the misrepresentation would materially impact the jury's assessment of the police officer's credibility, perhaps casting doubt on whether the drug-related items he identified also were mistakenly attributed to a search of Wall's home. The other items were photographed where they were found and their location thus was

---

after he, Powers, gave money to "the kid," who had been told by Wall to "stoke them up, set them up." Griffin testified that Wall told him that he supplied the cocaine used that night and that he injected Fortin. At trial, however, Wall denied injecting Fortin, but admitted on cross-examination that he agreed to get cocaine for the others. He also said, however, that he did not actually provide the cocaine to the others; they got the drug directly from the two teenagers who came to Wall's apartment.

substantiated; the misinformation about the $115 would therefore not affect the officer's credibility on the other evidence.

We reject, finally, appellant's assertion that the court abused its discretion in refusing to convene an evidentiary hearing on his new trial motion, specifically on the question of the testifying officer's good faith. See United States v. Rivera-Alicea, 205 F.3d 480, 487 (1st Cir. 2000) (abuse of discretion standard applies to review of refusal to hold evidentiary hearing on motions in criminal case). Appellant acknowledges that "evidentiary hearings on motions in criminal cases are the exception, not the rule," id., and we are satisfied that this was not the unusual case warranting such a hearing. The district court had observed the officer at trial, see United States v. Montilla-Rivera, 115 F.3d 1060, 1067 (1st Cir. 1997), and the fact that the officer erred in good faith was not implausible given the similarity between Wall's address and the actual location where the currency was seized. Particularly given the limited significance of the $115, the court was well within its discretion to resolve the motion without a hearing.

C. Causation Instructions and Ineffective Assistance of Counsel

Appellant makes a multi-pronged attack on the court's charge to the jury on the causal relationship between his alleged

-10-

distribution of cocaine and Fortin's death.  The court instructed the jury as follows:

> And I instruct you that for you to find that Loretta Fortin's death resulted from the use of cocaine that the defendant distributed, you must find that the government has proven beyond a reasonable doubt that Loretta Fortin died as a consequence of her use of the cocaine that the defendant distributed on or about the dates alleged in the indictment.

> I instruct you that you must find the evidence establishes beyond a reasonable doubt that the use of that cocaine played a significant causal role in bringing about the death of Loretta Fortin.

> And I instruct you that the government does not have to prove that Loretta Fortin's death from the use of the cocaine was foreseeable for the defendant or for the others.

Appellant contends that this charge suffered from three specific flaws: first, although he specifically requested the "significant causal role" language, he now claims that this instruction understated the government's burden of proof; second, he contends that the court should have instructed the jurors that, to convict him, they needed to find that there was no intervening or superseding cause of death; and, finally, he asserts that the wording of the instruction in effect required the jury to find causation.  Appellant additionally argues that his trial counsel's acquiescence to the causation instructions constituted ineffective assistance of counsel and thus was a Sixth Amendment violation.

We briefly address the asserted flaws below, but note at the outset that neither the claims of instructional error nor the

-11-

ineffective assistance claim are properly before us.  The causation charge as given by the trial judge was requested and specifically approved by defense counsel.  Indeed, at a sidebar conference held after the jury charge, counsel twice confirmed upon inquiry from the judge that he had "[n]o objection and no additional requests."  Having directly bypassed an offered opportunity to challenge and perhaps modify the instructions, appellant waived any right to object to them on appeal.  See United States v. Mitchell, 85 F.3d 800, 807 (1st Cir. 1996) (discussing difference between "waiver" and "forfeiture" and noting that only the latter is subject to plain error review).

The claim of ineffective assistance of counsel, meanwhile, runs up against our longstanding rule that "fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court," United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993); see also United States v. Martinez-Vargas, 321 F.3d 245, 251 (1st Cir. 2003).  Appellant argues that this case is unusual and worthy of consideration at this juncture because there was "no possible tactical reason" for trial counsel to request the "significant causal role" language, and the record is thus sufficiently developed to permit effective review.  See Mala, 7 F.3d at 1063.  We disagree, believing, as our discussion below indicates, that a tactical reason exists, and that this case,

like most, would thus benefit from the trial court's perspective on the attorney's performance and its impact. <u>See</u> <u>id.</u> In any event, our discussion <u>infra</u> of appellant's specific instructional complaints strongly suggests that, were we to reach the issue of counsel's competence, we inevitably would find no constitutional error.

Turning to appellant's specific complaints, we first address his claim that the court diluted the government's burden of proof by asking the jury to determine whether cocaine that he distributed "played a significant causal role in bringing about the death of Loretta Fortin." Under the statute, an enhanced sentence must be imposed on a defendant who commits a drug offense "if death or serious bodily injury results from the use of such substance," 21 U.S.C. § 841(b)(1)(C). We have described the necessary proof to be that "a defendant deals drugs and a user of those drugs dies as a result," <u>United States</u> v. <u>Soler</u>, 275 F.3d 146, 153 (1st Cir. 2002). Both the statute and our precedent thus link the jury's finding simply to whether death was a result of the offense; an instruction requiring jurors to find a "significant" causal relationship suggests a higher, rather than lower, burden of proof. Even if we were to review for plain error, therefore, appellant's contention would be unavailing.

We easily can dispose of appellant's second complaint about this portion of the instruction, which is that the opening words,

-13-

"I instruct you that you must find" directed the jurors to reach the conclusion contained in the second part of the sentence, i.e., that "the evidence establishes beyond a reasonable doubt that the use of that cocaine played a significant causal role in bringing about the death of Loretta Fortin." In context, it is clear that the court was advising the jurors that, <u>in order to convict</u>, they needed to conclude beyond a reasonable doubt that the evidence supported the specified causal relationship.

Appellant's remaining point, that the court improperly omitted an intervening cause instruction, also merits little response. Although he points to the other drugs and alcohol ingested by Fortin, appellant identifies no evidence in the record that would permit a conclusion that another substance, rather than cocaine, was responsible for her death. The medical examiner testified that, in his opinion, the level of cocaine in Fortin's system was enough by itself to kill her. He further stated that none of the other substances she had consumed was at a level sufficient to cause her death, and it was "very unlikely" that death would have resulted from only the combination of alcohol, codeine and valium. On this record, the failure to give an intervening cause instruction was not plain error.

D. <u>Sufficiency of the evidence on causation</u>

Recognizing that a defendant faces a heavy burden in challenging the sufficiency of the evidence, <u>see</u>, <u>e.g.</u>, <u>United</u>

-14-

States v. Scharon, 187 F.3d 17, 21 (lst Cir. 1999), appellant nonetheless argues that the record does not support the jury's finding that Fortin's death resulted from the use of cocaine that he distributed.  In particular, he contends that the medical evidence does not show that cocaine, rather than the other substances, triggered her death.

Our previous discussion of the medical examiner's testimony largely suffices to put this contention to rest as well.  Although both the medical examiner and a toxicologist identified Fortin's cause of death as "acute multiple drug poisoning," the medical examiner's explanation of the likely potency of the various substances permitted the jury to conclude that the cocaine was the significant element in the mix.  Indeed, the medical examiner explicitly stated that the cocaine was "the most important or key drug," and, when asked by the prosecutor if the level of cocaine found in her blood "could stand alone as the cause of [Fortin's] death," he replied affirmatively, assuming that the surrounding circumstances were identical.  This was a sufficient basis for the jury's verdict.

E. The Restitution Order

Wall next contends that the district court exceeded its statutory authority in ordering him to pay restitution of $6,109.89, the total charged to Medicaid in the oxycodone fraud, without specifying that his liability is joint and several with

other participants in the fraud. He acknowledges sole responsibility for transactions totaling $2,029.97, but argues that the restitution order must be modified to reflect that he shares liability for the remaining $4,079.92 with his co-defendants. Without such limitation, Wall contends that the restitution order would impermissibly allow recovery in excess of Medicaid's actual loss and would deny him credit for amounts paid by the others.

The government agrees that it may recover no more than the amount of the total loss, but asserts that no further court action is necessary because the limit on Wall's liability is implicit in the statutory scheme and explicit in caselaw. Under 18 U.S.C. § 3664(h), a court issuing a restitution order is permitted to apportion liability among defendants according to culpability or capacity to pay, or, in the alternative, to make each defendant liable for the full amount of restitution by imposing joint and several liability. See United States v. Scott, 270 F.3d 30, 52 (1st Cir. 2001) (quoting legislative history stating that court has "'the discretion either to make multiple defendants jointly and severally liable . . . or to apportion the restitution order among the various defendants'"). It is well established, however, that "the victim may recover no more than the total loss, the implication [being] that each defendant's liability ends when the victim is made whole," id.

We think the only plausible view of the record is that the district court intended to impose joint and several liability on Wall for the full amount of restitution. His attorney specifically had requested such an approach, there was no objection from the government, and no questioning by the court on this issue. See generally id. at 53 ("natural reading" of the restitution order within the context of the statute was that liability would be a form of joint and several); United States v. Trigg, 119 F.3d 493, 501 (7th Cir. 1997) ("We do not believe . . . that it is plausible to read the district court's [restitution] orders in any other way.").

Moreover, although the court did not check the box on its judgment form designating the liability as joint and several, its comments during the sentencing hearing reflect an assumption that appellant's obligation to pay was to be shared with others. In urging the government to eliminate a challenged amount of about $1,200 from its restitution request, the court noted that that debt would in all likelihood be discharged by others:

> We have numerous co-defendants who are already sentenced to pay that amount. We have an extremely remote likelihood that this defendant is ever going to make any restitution . . . .

With the nature of the order this clear, we decline to extend the proceedings by remanding for a technical clarification. We urge district courts in the future, however, to avoid such issues by stating "with more specificity than was done in this case the

-17-

precise contours of the arrangement," Trigg, 119 F.3d at 501. A judgment that specified joint and several liability, up to the maximum amount of the loss, would have eliminated appellant's uncertainty (and basis for appeal) and provided guidance to those administering the various related restitution orders. An explicit notation would serve as notice that appellant's obligation may be discharged in part by others' payments, information that might prevent excessive recovery. See Scott, 270 F.3d at 53 (preferable for district courts "to refer expressly to the limit placed on the government's total recovery").

We therefore affirm the district court's restitution order, which we construe to impose joint and several liability up to the designated total loss of $6,109.89.[9] See id. (similarly affirming a restitution order "on our view that its natural reading is as we have described").

F. Pro se Claims

Appellant asserts that certain of his prior state law convictions based on guilty pleas should not have been used to calculate his sentence in these cases because he was not warned of such collateral consequences at the time he entered his pleas. It is well established that this is not a viable claim. See Custis v. United States, 511 U.S. 485, 493-97 (1994) (validity of prior state

---

[9] As noted earlier, a portion of that loss – $2.029.97 – is solely appellant's responsibility.

convictions may be attacked in federal sentencing proceedings only if grounded on deprivation of right to counsel); <u>Brackett</u> v. <u>United States</u>, 270 F.3d 60, 65 (1st Cir. 2001).

III. <u>Conclusion</u>

As our discussion makes clear, none of appellant's substantive complaints casts doubt on the jury's judgment. We therefore affirm his convictions. We also affirm the court's restitution order, clarifying that it imposes joint and several liability on appellant, up to the full amount of the determined loss, $6,109.89.

<u>Affirmed.</u>