FILED

NOV 19 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   WW-13-1230-TaDJu |
| THOMAS R. HAZELRIGG, III, | ) | Bk. No.   11-22731-TWD |
| Debtor. | ) | Adv. No.  12-01966-TWD |
| _____ | ) | |
| THOMAS R. HAZELRIGG, III, | ) | |
| Appellant, | ) | |
| v. | ) | **MEMORANDUM**[*] |
| UNITED STATES TRUSTEE, | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued on October 17, 2013 at Seattle, Washington
Submitted on October 23, 2013[**]

Filed - November 19, 2013

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Timothy W. Dore, Bankruptcy Judge, Presiding

Appearances:     Marc S. Stern argued for appellant Thomas R. Hazelrigg, III; William Lewis Courshon argued for appellee United States Trustee.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**] Prior to oral argument before The Honorable Randall L. Dunn and The Honorable Laura S. Taylor, The Honorable Frank Kurtz recused himself from consideration of the appeal.  The matter was reassigned to Judge Taylor, Judge Dunn and The Honorable Meredith A. Jury.  Following reassignment, submission was deferred until Judge Jury listened to the recording of the oral argument and the Panel discussed the merits of the appeal.

Before:  TAYLOR, DUNN, and JURY, Bankruptcy Judges.

**INTRODUCTION**

The United States Trustee ("UST") moved for summary judgment on her adversary complaint objecting to the discharge of debtor Thomas R. Hazelrigg, III ("Debtor") under § 727(a)(3)[1] and (a)(5).  The bankruptcy court granted relief under § 727(a)(5). The Debtor moved for reconsideration, which the bankruptcy court denied.  He appeals from the order denying his motion for reconsideration.  We AFFIRM.

**FACTS**

On October 31, 2011, creditors of the Debtor commenced an involuntary Chapter 7 proceeding against him.  Prior to this time, the Debtor was a well-known financier and businessman in the Seattle area.  He also was an associate of an individual named Michael Mastro ("Mastro").  Mastro was formerly a major Seattle real estate developer and, like the Debtor, was involuntarily placed into chapter 7 bankruptcy.  In fact, James F. Rigby, the chapter 7 trustee in Mastro's bankruptcy case, was one of the petitioning creditors in the Debtor's involuntary case.

The order for relief ("Relief Order") was entered in February of 2012.[2]  The Debtor subsequently filed schedules and a

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We take judicial notice of certain documents

(continued...)

2

statement of financial affairs ("SOFA").  Other than stating his name and address on the petition and executing the documents, the schedules and SOFA were blank; the Debtor, instead, asserted a blanket Fifth Amendment privilege next to each signature block.

Pursuing an obvious need for additional information, the UST moved to compel the Debtor to file amended and complete schedules and a SOFA or to assert a Fifth Amendment privilege to each question.  The bankruptcy court agreed and entered an order directing the Debtor to comply.  He submitted a first and then a second set of amended schedules and a SOFA.  The Debtor listed one vehicle in his amended Schedule B - a 2008 PT Cruiser – and disclosed that two cars were sold to Carmax approximately one or two years prior to petition; he did not describe these vehicles or provide any other details of the transactions.

Based on a Rule 2004 order, the UST issued a document subpoena ("Subpoena") to the Debtor.  In an attached document, the UST outlined a request for documents regarding the transfer, disposition, or ownership of certain assets owned or previously owned by the Debtor, assets neither scheduled nor otherwise referenced in the Debtor's amended schedules or SOFA. Apparently, as part of the investigation in the Mastro bankruptcy case, the UST came into possession of a balance sheet dated

---

[2](...continued)
electronically filed in the Debtor's bankruptcy case.  <u>See</u> <u>O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)</u>, 887 F.2d 955, 957-58 (9th Cir. 1989); <u>Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)</u>, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

July 31, 2008 ("Balance Sheet"),[3] detailing the Debtor's assets (and their value) as of that date. Using this document, the UST expressly identified the following assets in the Subpoena: five luxury vehicles valued at $459,000; fees receivable valued at $1,145,500; and real estate owned personally and indirectly, valued at $49,956,350 (including the assets described in footnote four, collectively hereafter, the "Assets").[4]

The Debtor responded to the Subpoena ("Subpoena Response"), once again asserting a blanket Fifth Amendment privilege to the UST's inquiry; he did not, however, produce any documentation. Afterward, he supplemented his response with a copy of the vehicle registration certificate and car insurance for the PT Cruiser. This was the extent of his document production in response to the Subpoena.

In response, the UST commenced an adversary proceeding against the Debtor, objecting to the Debtor's discharge under § 727(a)(2), (a)(3), (a)(4), and (a)(5). Among other things, the adversary complaint alleged that the Debtor owned the Assets in 2008, but failed to account for the transfer, disposition, or ownership of the Assets in the bankruptcy case.

---

[3] At oral argument, the Debtor conceded that he did not dispute the authenticity of the document.

[4] The luxury vehicles included a: 2006 Mercedes CLK 350; 2007 Range Rover RHS; 2008 Bentley GT; 2005 Bentley Azure; and 2009 Bentley Brookland.
The Subpoena also identified the following assets: Art collection – $900,000; Plasma Drive stock - $400,000; Note and Contracts Receivable - $13,892,452; Centurion Financial Group – $13,000,000; Mukilteo Lots - $300,000; Dogwood Meadows – $4,696,368; and Bontrager Judgment - $1,438,456.

The Debtor immediately sought dismissal of the adversary complaint under Civil Rule 12(b) and (c) ("Motion to Dismiss"), arguing that the UST failed to plead the elements of fraud with particularity as required by Civil Rule 9(b). The bankruptcy court denied the motion ("Dismissal Order") and ordered the Debtor to answer the adversary complaint.

The UST subsequently moved for summary judgment ("MSJ"), but only as to the § 727(a)(3) and (a)(5) claims. In support of the MSJ, she attached the declaration of Thomas Buford ("Buford"), counsel for the UST; she also attached the Subpoena, Balance Sheet, and Subpoena Response and supplemental response, among other documents.

In his declaration, Buford detailed the various efforts undertaken by the UST to serve the Debtor with the Subpoena. He declared that other than copies of the car registration and insurance for the PT Cruiser, the Debtor had not produced any other documents responsive to the Subpoena.

In his response to the MSJ ("MSJ Response"), the Debtor contested the service and timeliness of the Subpoena. He complained that early in the adversary proceeding, the UST delivered digital discs to his attorney, containing thousands of electronic files of the Debtor's financial records not previously available to him. He blamed his failure to provide documents personally on the death of his bookkeeper, Ann Stockton ("Stockton"), and the fact that "her computer suffered a fatal crash" such that any information regarding a backup "died with her." The Debtor finally discussed the disposition of the Seattle residences, two valuable chandeliers, and other art

5

pieces.

The Debtor attached only two declarations in opposition to the MSJ: his attorney's declaration and the declaration of Steffen Jacobson, husband of the late bookkeeper. He did not personally submit a declaration and provided no other documentary evidence. The attorney's declaration echoed the MSJ Response and attached the Subpoena Response already presented by the UST. Jacobson confirmed his wife's death in October of 2011 and the post-October 2011 destruction or loss of all her physical and computer records relating to Debtor.

Following presentation of arguments at the MSJ hearing, the bankruptcy court orally ruled; it denied summary judgment on the § 727(a)(3) claim, but granted summary judgment on the § 727(a)(5) claim. Relying on the Balance Sheet, the bankruptcy court determined that the UST made her prima facie case under § 727(a)(5). In particular, it determined that the Debtor's explanations regarding the luxury cars listed on the Balance Sheet were inadequate. It noted, for example, that the amended SOFA vaguely referenced a transfer of two cars to Carmax, but lacked descriptive information as to the cars or transactions. It further noted that the Balance Sheet listed millions in receivables, none of which were scheduled by the Debtor, save for one account that he valued at zero dollars.

The bankruptcy court observed that while the Debtor made numerous statements regarding the missing Assets, he provided no evidence to support his assertions. His declaratory evidence addressed the records issue, the bankruptcy court determined, but did not constitute admissible evidence that accounted for the

6

missing Assets.

Following the hearing, the bankruptcy court entered an order ("Judgment")[5] granting relief to the UST on the § 727(a)(5) claim. The Judgment contained a Civil Rule 54(b) certification.

Undeterred, the Debtor moved for reconsideration ("Motion to Reconsider") on the § 727(a)(5) determination under Rule 9023 and Civil Rule 59. He argued, among other things, that reconsideration was warranted because he had asserted a valid Fifth Amendment privilege. Rejecting this argument, the bankruptcy court denied the motion ("Reconsideration Order"), determining that the Debtor failed to properly invoke the privilege in response to the MSJ. In doing so, it noted that based on an earlier hearing in the bankruptcy case (ostensibly, the UST's motion to compel amended schedules), both the Debtor and Stern were acutely aware that to the extent the Debtor wished to invoke the Fifth Amendment privilege, he was required to do so on a question-by-question basis. Therefore, blanket assertions of privilege in prior documents and the Debtor's subsequent reference to those blanket assertions was insufficient to raise the issue of privilege in response to the MSJ.

---

[5] Where an appeal is taken from a final, entered order and there is no objection to the lack of a separate judgment, the separate document rule is deemed waived. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 386 (1978).

While the document here is titled "Order Regarding Motion for Summary Judgment," the bankruptcy court deemed it a final order and it contains no findings of fact. Neither party objected to the lack of a separate document. Thus, we construe it as final for the purposes of this appeal. See also Fed. R. Civ. P. 58(c)(2)(B) (incorporated into adversary proceedings by Rule 7058).

7

The Debtor timely appealed from the Reconsideration Order.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J).  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

**ISSUES**

1.   Did the bankruptcy court err in granting summary judgment on the § 727(a)(5) claim?[6]

2.   Did the bankruptcy court err in denying the Debtor's Motion to Dismiss as to the § 727(a)(5) claim?

3.   Did the bankruptcy court err in denying the Debtor's Motion to Reconsider under Civil Rule 59(e)?

**STANDARDS OF REVIEW**

We review de novo a bankruptcy court's decision to grant summary judgment.  Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013). We may affirm summary judgment on any ground supported by the record.  Cusano v. Klein, 264 F.3d 936, 950 (9th Cir. 2001).

A motion to dismiss is also reviewed de novo.  See Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011). Denial of a motion to reconsider is reviewed for an abuse of discretion.  Morrissey v. Stuteville (In re Morrissey), 349 F.3d 1187, 1189 (9th Cir. 2003).

Abuse of discretion is a two-prong test; first, we determine de novo whether the bankruptcy court identified the correct legal

---

[6] Neither party addresses the denial of summary judgment on the § 727(a)(3) claim, and, thus, we do not address that issue on appeal.

8

rule for application. See United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If not, then the bankruptcy court necessarily abused its discretion. See id. at 1262. Otherwise, we next review whether the bankruptcy court's application of the correct legal rule was clearly erroneous; we will affirm unless its findings were illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See id.

## DISCUSSION

**A. The Scope of Appeal.**

On appeal, the Debtor, in part, argues that the bankruptcy court erred when it denied the Motion to Dismiss under Civil Rule 12(b) and (c). The Dismissal Order was an interlocutory order, which merged into the Judgment. See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 897 (9th Cir. 2001). Because the Judgment contained a Civil Rule 54(b) certification, it is a final judgment. See Fed. R. Civ. P. 54(b) (incorporated into adversary proceedings by Rule 7054); see also Belli v. Temkin (In re Belli), 268 B.R. 851, 855-56 (9th Cir. BAP 2001). The Motion to Reconsider tolled the time to appeal the Judgment. See Fed. R. Bankr. P. 8002(b)(2). The latter then merged into the order disposing of the Motion to Reconsider.

Even so, the scope of review is limited to the issues directly on appeal and other issues either "inextricably intertwined" with the issues on appeal or those issues essential to resolution of the order on appeal. See Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 45 (1995).

Here, the issue on appeal is the denial of the Debtor's

9

discharge under § 727(a)(5). The Debtor assigns error to the Dismissal Order based on the UST's failure to plead fraud with particularity in the adversary complaint. Assertions of fraud, misrepresentation, and concealment, however, relate to claims under § 727(a)(2) or (a)(4), not § 727(a)(5). Further, the claims under § 727(a)(2), (a)(3), and (a)(4) are neither "inextricably intertwined" with the issue on appeal nor essential to resolution of the order on appeal. Thus, the Motion to Dismiss is irrelevant to our consideration of the § 727(a)(5) claim.

We begin with the summary judgment issue.

**B. The bankruptcy court did not err in granting summary judgment in favor of the UST on the § 727(a)(5) claim.**

Summary judgment is appropriate when there is no genuine dispute of material fact, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56 (incorporated into adversary proceedings by Rule 7056); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Substantive law governs the materiality of a fact; thus, a fact is material if, under applicable substantive law, it may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All justifiable inferences are drawn in favor of the non-moving party. Id. at 255.

The movant must first identify: "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of

10

material fact." Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008) (citing Celotex Corp., 477 U.S. at 323). The movant must meet its initial burden as to all elements of the claim for relief. Once the movant meets its burden, the burden shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." Id. (citing Fed R. Civ. P. 56(e)(2)).

The non-moving party, however, cannot rest on mere allegations or denials in his or her pleadings. Rather, the non-moving party must present admissible evidence showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(e). As such, "[b]riefs and oral argument do not constitute evidence." In re Hill, 450 B.R. 885, 892 (9th Cir. BAP 2011); see also British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

In general, the bankruptcy court must grant a discharge to an individual chapter 7 debtor unless one of the twelve enumerated grounds in § 727(a) is satisfied. In the spirit of the "fresh start" principles that the Bankruptcy Code embodies, claims for denial of discharge are liberally construed in favor of the debtor and against the objector to discharge. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009). The objector to discharge, thus, bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied under an enumerated ground of § 727(a). Id.

One basis for denial of discharge exists where the chapter 7 debtor fails "to explain satisfactorily, before determination of

11

denial of discharge . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). To establish a prima facie case under § 727(a)(5), the objector to discharge must demonstrate that:

> (1) [the] debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.

Retz v. Sampson (In re Retz), 606 F.3d 1189, 1205 (9th Cir. 2010).

Once the objector makes a prima facie case, the burden shifts to the debtor to offer credible evidence regarding the disposition of the missing assets. Id. at 1205. The sufficiency of the debtor's explanation, if any, is a question of fact. See id. The bankruptcy court has broad discretion in making this determination. See id.

On appeal, the Debtor argues that the bankruptcy court erred in granting summary judgment because: (1) a valid assertion of the Fifth Amendment privilege constitutes a satisfactory explanation under § 727(a)(5); (2) the Balance Sheet was issued outside of any "look-back" period, whether one or two years, and therefore was too remote; and (3) the UST should have, but never asked the Debtor about the subject losses of assets.

As a preliminary matter, we observe that neither the first nor second issues were raised before the bankruptcy court in

12

connection with the MSJ.[7]  The Debtor invoked the Fifth Amendment privilege per a blanket assertion in the first paragraph of the Subpoena Response; but, he did not assert or invoke the privilege in his MSJ Response; he did not submit a declaration or affidavit with the MSJ Response where he asserted or invoked the privilege; and he did not assert or invoke the privilege at the MSJ hearing. In sum, he never raised it in response to the § 727(a)(5) claim. Therefore, we decline to consider this issue in connection with review of the MSJ.  See Padgett v. Wright, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam).

Even if we considered the Fifth Amendment privilege issue, however, the negative inferences that the bankruptcy court may make from a debtor invoking the Fifth Amendment privilege would not be helpful to the Debtor here.  See, e.g., Leonard v. Coolidge (In re Nat'l Audit Def. Network), 367 B.R. 207, 216 (Bankr. D. Nev. 2007) (where a debtor asserts the Fifth Amendment privilege in a civil matter, the bankruptcy court is entitled to make an adverse inference provided that corroborating evidence exists).

Similarly, the Debtor did not assert that the Balance Sheet was issued outside of the appropriate "look-back" period in response to the MSJ.  The record shows that, as with the Fifth Amendment privilege issue, he first raised this argument only in the Motion to Reconsider.  Thus, we also decline to consider this

---

[7] The Debtor just barely raised the third issue in the MSJ Response, asserting an absence of evidence that the *chapter 7 trustee* had "asked for anything."

13

issue in connection with the MSJ.[8]  See Padgett, 587 F.3d at 985 n.2.

The Debtor maintains that the bankruptcy court erred in determining that he failed to explain the loss of assets because, according to the Debtor, the UST was required to first ask him about the assets allegedly missing, which she allegedly never did.  He appears to argue that because a Rule 2004 examination was never scheduled, the UST never made the requisite inquiry.

Based on our de novo review of the record, the UST made her prima facie case for denial of discharge under § 727(a)(5), and the Debtor failed to raise any genuine dispute of material fact.  Thus, the UST was entitled to judgment as a matter of law.

The UST provided documentary and declaratory evidence that at or around the end of July of 2008, the Debtor owned the Assets.  As noted by the bankruptcy court, this fact was not refuted by the Debtor; in fact, the Debtor conceded this point at oral argument.  The UST further provided evidence that following

---

[8] Even if we considered this issue, however, we assign no error to the bankruptcy court's ultimate determination on the issue of the time period between the Balance Sheet and the petition date.  The UST presented the Balance Sheet as evidence in support of the MSJ.  As stated above, the Debtor failed to raise this argument before the bankruptcy court, let alone present *any* controverting evidence.  The bankruptcy court, thus, implicitly determined that no triable issue of fact existed as to whether the Balance Sheet was "too remote" from the petition date.

The undisputed facts of the extraordinary quantum of luxury items and the Debtor's sophisticated business certainly support this determination.  Therefore, on this record, the bankruptcy court did not err in concluding that there was no genuine dispute as to the time period issue.

14

entry of the Relief Order in February of 2012, the Debtor no longer owned the Assets. Again, and also as noted by the bankruptcy court, this fact was not refuted with evidence by the Debtor. The Debtor's *unsworn statements* claiming that some of the Assets were executed on in his case or in other bankruptcy cases or that the dip in the real estate market explained the loss of the Assets are not admissible evidence. Without the support of admissible evidence, these statements fall far from demonstrating a genuine dispute of material fact.

Finally, the UST demonstrated that neither the Debtor's amended schedules nor SOFA provided an adequate explanation for the disposition of the missing Assets. For example, the second amended SOFA reflected the sale of two cars to Carmax, but failed to provide any details of the transactions, including descriptions of the cars sold. Thus, the UST made her prima facie case under § 727(a)(5).

Having concluded that the UST met her burden, the burden shifted to the Debtor to offer a satisfactory explanation as to the disposition of the missing Assets. The bankruptcy court determined that the Debtor failed to show that there existed a genuine dispute on this issue for trial. On this record, we concur.

Once again, the Debtor did not submit a declaration or affidavit in opposition to the MSJ. The only evidence presented by the Debtor were the declarations of his attorney and Jacobson. As pointed out by the bankruptcy court, however, these declarations fail to show a triable issue of fact. The declarations - and the Jacobson declaration, in particular -

address issues relating to proper recordkeeping.

The Balance Sheet delineated five luxury cars collectively valued at $459,000 in 2008, yet the Debtor's amended schedules solely reflected a PT Cruiser. The document also reflected substantial fee receivables; but the Debtor only scheduled one account receivable with an "indeterminate" value. The Debtor's amended SOFA vaguely disclosed a transfer of two cars to Carmax with no additional information. Even if the Debtor's statements in response to the MSJ were admissible evidence – which they are not – the executions on his real properties and the dip in the real estate market fail to account for the missing luxury vehicles or fee receivables. In sum, the Debtor failed to proffer admissible evidence explaining the disposition of the missing Assets.

We also reject the Debtor's assertion that the UST never asked him about the missing Assets; this argument extols form over substance and is without merit. The record shows that the UST issued the Subpoena, which specifically identified the Assets, and that she requested an accounting. The adversary complaint and MSJ both identified the same missing assets. There is no requirement that the UST inquire about missing assets through a personal examination of the Debtor. Under these circumstances, the Subpoena, adversary complaint, and MSJ were each and independently a sufficient form of inquiry for the purposes of § 727(a)(5).

Finally, we reject the notion that the UST's possession of voluminous Debtor financial documents provided a defense or otherwise supported the Debtor's position. First, the Debtor

16

never provided any evidence that, generally, all or some of these documents explained the transfers or disposition of all or some of the missing Assets. Second, the Debtor never specifically identified which particular documents, if any, provided the requisite explanation. The Debtor, thus, never supported his broad assertion with evidence creating a triable fact issue.

On this record, the UST established a prima facie case under § 727(a)(5). The Debtor failed to set forth any specific facts showing a triable factual dispute regarding the missing Assets. Therefore, the bankruptcy court did not err in granting summary judgment on the § 727(a)(5) claim.

**C.    The bankruptcy court did not err in denying the Debtor's Motion to Dismiss on the § 727(a)(5) claim.**

Dismissal of a complaint under Civil Rule 12(b)(6) may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Courts must construe the complaint in the light most favorable to the non-moving party and accept all well-pleaded factual allegations as true. Id.; Knox v. Davis, 260 F.3d 1009, 1012 (9th Cir. 2001). Under either instance, the essential inquiry is whether the allegations are well-pled; a court is not bound by conclusory statements, statements of law, or unwarranted inferences cast as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).

As noted above, the Debtor did not directly address issues related to § 727(a)(5) in his Motion to Dismiss or on appeal as

17

related to that motion. And, again, the Motion to Dismiss was based on the UST's alleged failure to plead the fraud claims for relief with particularity, an alleged deficiency that is irrelevant to a § 727(a)(5) claim for relief. In any event, having resolved that the bankruptcy court properly granted summary judgment on the § 727(a)(5) claim, we conclude that the UST necessarily pled enough facts in the adversary complaint to state a plausible claim for relief. It consequently follows that the bankruptcy court did not err in denying the Motion to Dismiss on the § 727(a)(5) claim.

**D. The Debtor waived any argument as to the Reconsideration Order; but, in any event, the bankruptcy court did not err in denying the Debtor's Motion to Reconsider Under Civil Rule 59(e).**

Under Civil Rule 59(e), the bankruptcy court may reconsider a previous order or judgment, but only if it: (1) is presented with newly discovered evidence that was not available at the time of the original hearing; (2) committed clear error or made an initial decision that was manifestly unjust; or (3) there is an intervening change in controlling law. Fadel v. DCB United LLC (In re Fadel), 492 B.R. 1, 18 (9th Cir. BAP 2013).

The Debtor advances no argument as to why the bankruptcy court abused its discretion in denying the Motion to Reconsider. Consequently, this issue is deemed waived, and we do not consider it on appeal. See Padgett, 587 F.3d at 985 n.2.

Even if we examined the issue of reconsideration, on this record, the bankruptcy court did not abuse its discretion in denying the Motion to Reconsider. In his motion, the Debtor

18

either rehashed the same arguments that he made in opposing the MSJ or presented new legal theories and facts that he could have – but failed to – raise in connection with the MSJ. To the extent that the Debtor raised the Fifth Amendment privilege issue on reconsideration, he absolutely did not do so in responding to the MSJ before the bankruptcy court, either in writing or at the MSJ hearing. Those arguments, thus, are inappropriate grounds for a reconsideration motion. See In re Fadel, 492 B.R. at 18 (citation omitted). Therefore, on this record, the bankruptcy court did not abuse its discretion in denying the Motion to Reconsider.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court.