# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLOR, POND, and STEELE
Appellant Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant DAVID M. INGRAM**
**United States Army, Appellant**

ARMY 20230608

Headquarters, U.S. Army Maneuver Center of Excellence
Trevor I. Barna and Pamela L. Jones, Military Judges
Colonel Javier E. Rivera, Staff Judge Advocate

For Appellant: Terri R. Zimmermann, Esquire (argued); Captain Amir R. Hamdoun, JA; Jack B. Zimmermann, Esquire; Terri R. Zimmermann, Esquire (on brief); Captain Emily R. Ittner, JA; Jack B. Zimmermann, Esquire; Terri R. Zimmermann, Esquire (on reply brief).

For Appellee: Captain Nicholas A. Schaffer, JA (argued); Colonel Richard E. Gorini, JA; Major Elizabeth G. Van Dyck, JA; Captain Nicholas A. Schaffer, JA (on brief).

9 March 2026

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

STEELE, Judge:

An enlisted panel, sitting as a general court-martial, found appellant guilty, contrary to his pleas, of one specification of attempted sexual abuse of a child involving indecent communication, one specification of attempted sexual abuse of a child involving indecent exposure, one specification of attempted knowing and wrongful receipt of child pornography, and one specification of wrongful solicitation of another to distribute child pornography, in violation of Articles 80 and 82, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 882 [UCMJ]. The military

judge sentenced appellant to a bad-conduct discharge, fifteen months of confinement,[1] and to be reduced to the grade of E-1.

Appellant raises four assignments of error: (1) the search of appellant's cell phone violated the Fourth Amendment; (2) reversible error occurred when two government witnesses commented on appellant's exercise of his right to remain silent; (3) the military judge reversibly erred by improperly instructing the members; and (4) the evidence is legally and factually insufficient to support appellant's convictions. For the reasons set forth below, we disagree and affirm.[2]

## BACKGROUND

Mr. ███, a private citizen in the Fort Benning area, operated a social media platform on his YouTube channel called "Pred TV," a "to catch a predator" operation where he utilized various adults as "decoys" to pose as underaged minors to catch adults engaging in sexually explicit conversations with them. In the fall of 2022, Ms. ███ agreed to work as a decoy for Mr. ███ She created a profile on the Whisper application[3] under the screen name "Little-palidan," where she posed as a fifteen-year-old minor to aid in identifying and catching child sexual predators within the community.

Ms. ███ exchanged messages on the Whisper application with an individual using the screen name "Corn_Energy." The individual described himself as a thirty-year-old drill sergeant who worked at Sand Hill, Fort Benning. He also claimed he had been a drill sergeant for six months, in the Army for ten years, and that he drove

_____

[1] The military judge sentenced appellant to nine months of confinement for each offense of attempted sexual abuse of a child in Specification 1 and 2 of Charge I, to be served concurrently (Concurrent Group 1). The military judge sentenced appellant to six months of confinement for the attempted receipt of child pornography in Specification 3 of Charge I and six months for the wrongful solicitation of another to distribute child pornography in The Specification of Charge II, to be served concurrently (Concurrent Group 2). The military judge ordered the sentences of nine and six months of confinement to be served consecutively, for a total of fifteen months of confinement.

[2] We have given full and fair consideration to the matter personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine that it warrants neither discussion nor relief.

[3] Whisper is a free messaging platform that allows users to communicate without providing or disclosing their identities and assigns a non-unique nickname to each user. Whisper users do not generally provide to Whisper their names, email addresses, phone numbers, or similar identifying information.

a black Ford F-150 truck. Ms. ■ stated that she was fifteen-years-old. Despite being informed of her age, appellant sent Ms. ■ messages that were sexually explicit and graphic in nature.[4] Appellant also sent Ms. ■ five photographs. The photographs included two fully clothed photos of appellant, one photo of only his face, and two sexually explicit photos that depicted male genitalia, but did not show appellant's face. Several of the Whisper messages occurred during the night when appellant stated he was either at work or working a 24-hour shift, which established that some of the photos were not taken contemporaneously with their sending. For example, one photo depicted appellant standing on a boat. Appellant requested Ms. ■ send him a "nude" photo, a "selfie," and that she "pop a tit" for him.

Ms. ■ took screenshots of the messages and photos she received through the Whisper application and provided them to Mr. ■, who in turn provided them to the Fort Benning Criminal Investigation Division (CID) Field Office. Ms. ■ ceased taking part in the "to catch a predator" operations and deleted the Whisper application, which resulted in all messages and photos between Ms. ■ and "Corn_Energy" being deleted from her cell phone. Upon reviewing the messages and photos, Special Agent (SA) ■ recognized appellant—having served with him previously—and determined he was conflicted from participating further in the investigation. He transferred the case to other CID agents, to include SA ■, who were able to confirm that appellant drove a black Ford F-150 truck and worked on Sand Hill, on Fort Benning. Based on an affidavit from SA ■, the agents then obtained a military magistrate's authorization to seize and search appellant's cell phone. The authorization permitted CID to search the phone for "photos, images, and text messages related to" the Whisper application messages between appellant and Ms. ■ Criminal Investigation Division special agents also sought to interview him, wherein he invoked his rights and requested counsel.

A digital forensics examiner (DFE) completed an extraction of appellant's cell phone. After reviewing the extraction, CID confirmed the Whisper application was once installed on appellant's phone. However, no corresponding databases could be recovered, indicating the app was subsequently deleted prior to the cell phone's seizure. Furthermore, the cell phone's inherent encryption method rendered the data unrecoverable. The search of the extracted data also located four photos in the cell phone's camera roll that matched four of the five photos sent to Ms. ■ aka "Little-palidan," through the Whisper application. Two photos were verified to be appellant as they showed appellant's face, to include the photo of appellant standing on a boat. The third photograph depicted an individual sitting down wearing a black army physical fitness (PT) uniform with a drill sergeant PT vest, with his genitals exposed. The fourth photograph depicted an unverified male with no clothing,

---

[4] These messages included various discussions and descriptions of the various sexual acts that appellant and Ms. ■ would perform with one another and were admitted into evidence.

genitals exposed with a mole above his genitalia, and a tattoo on the right abdominal area.

## LAW AND DISCUSSION

*A. Whether the Search of Appellant's Cell Phone Violated the Fourth Amendment*

*1. Additional Background*

At trial, the defense moved to suppress the evidence from appellant's cell phone arguing: (1) the search authorization lacked particularity; and (2) was overbroad, in violation of the Fourth Amendment. The military magistrate testified he reviewed SA ██ affidavit, which included the Whisper messages and photographs as attachments, and spoke to the agent, and determined there was probable cause to search appellant's personal electronic communication devices. The search authorization allowed CID to search appellant's cell phone for "photos, images, and text messages *related to* communication via the Whisper application between [appellant] and [Ms. ██," (emphasis added). The military magistrate testified his intent was to allow CID to look for photographs on appellant's electronic devices beyond the date range of the Whisper application messages based on his understanding that the Whisper application functioned like other applications on a cell phone, accessing the camera, camera roll, or "anywhere else" photos are stored. The magistrate elaborated:

> for instance, if the photo was taken outside the [25 September to 12 October 2022] range, but uploaded within that range, because this is the photo that was used in the communication that happened during the time range, then it should be one that CID should be able to look at and use it to either corroborate or confirm that no photos of that nature exist on the accused's phone.

Upon re-direct examination by the government to clarify the use of the word "related" in the scope of the search authorization, the magistrate testified, "if they looked at photos and they could see that this is related to that communication that was happening within that range, then it's within the scope."

Defense's expert testified the software used by CID to review the extracted cell phone data had filtering tools to limit the scope of a search. Applying the data parameters of the search authorization, the expert testified he did not recover the same four photos that CID discovered. Special Agent ██ testified that he reviewed the extraction of appellant's cell phone "specifically looking for the five images that were in the Whisper chats." Special Agent ██ testified he did not use a filter or search parameter to sort the images on appellant's phone because he understood the

search authorization allowed him to "look[] through all the images stored on the device to identify whether those messages which *related to* the Whisper messages were there," which "included images that might have been taken outside of that September to October timeframe." (emphasis added).

The military judge denied the defense motion to suppress. In summary, the military judge concluded:

(1) The government demonstrated by a preponderance of the evidence the photos were not obtained as a result of an unlawful search, or, alternatively, the "good faith" exception applied.

(2) Criminal Investigation Division's search of the accused cell phone did not exceed the scope of the search authorization.

(3) The military magistrate understood the photos the accused sent through the Whisper application could have been in the camera roll and uploaded to the application.

(4) The search authorization permitted the search of appellant's phone and authorized digital examination of the phone for photos, images, and text message related to communication via the Whisper application between the accused and Ms. ■■.

(5) There was specific evidence that the accused attempted to send explicit photos to a fifteen-year-old minor and that he solicited Ms. ■ to send explicit photos, thus, it was reasonable to believe the photos the accused sent were located in the camera roll of his cell phone.

(6) There was no evidence that CID rummaged through the accused cell phone, and even if the search was less than ideal, it was directed toward finding data in compliance with a search authorization.

On appeal, appellant argues the search authorization violated the Fourth Amendment in that it: (1) lacked particularity to search the camera roll; (2) was facially overbroad which led to a complete rummaging through appellant's cell phone; and, as such, (3) that the good faith exception to the exclusionary rule did not apply.

### 2. Standard of Review

This court reviews a military judge's denial of a motion to suppress for an abuse of discretion. *United v. Shields*, 83 M.J. 226, 230 (C.A.A.F. 2023) (citation omitted). An abuse of discretion occurs when a military judge's:

> "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." "An abuse of discretion must be more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."

*Id.* (first quoting *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020); and then quoting *United States v. Black*, 82 M.J. 447, 451 (C.A.A.F. 2022)). When we review a decision on a motion to suppress, "we consider the evidence in the light most favorable to the prevailing party." *United States v. Cowgill*, 68 M.J. 388, 390 (C.A.A.F. 2010).

We review de novo questions regarding whether a search authorization is overly broad. *United States v. Maxwell*, 45 M.J. 406, 420 (C.A.A.F. 1996). The military magistrate's decision to issue a search authorization is reviewed to determine whether they "had a substantial basis for determining that probable cause existed." *Cowgill*, 68 M.J. at 390 (internal quotation marks omitted) (citation omitted); *see also United States v. Rogers*, 67 M.J. 162, 164-65 (C.A.A.F. 2009). A military magistrate has a substantial basis to issue a warrant "when, based on the totality of the circumstances, a common-sense judgment would lead to the conclusion that there is a fair probability that evidence of a crime will be found at the identified location." *Rogers*, 67 M.J. at 165 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007)).

This court gives "'great deference' to a military magistrate's probable cause determination because of 'the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.'" *United States v. Nieto*, 76 M.J. 101, 105 (quoting *Gates*, 462 U.S. at 236). To decide whether there was a substantial basis for probable cause, the magistrate looks to the totality of the circumstances. *Rogers*, 67 M.J. at 165 (citing *Gates*, 462 U.S. at 238). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that . . . evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "However, this deference is 'not boundless,' and a reviewing court may conclude that 'the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances.'" *Nieto*, 76 M.J. at 105 (quoting *United States v. Leon*, 468 U.S. 897, 915 (1984)). "'Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.'" *United States v. Hoffmann*, 75 M.J. 120, 125-26 (C.A.A.F. 2016) (quoting *Gates*, 462 U.S. at 239). If a military

magistrate has "a substantial basis to find probable cause, a military judge [does] not abuse [their] discretion in denying a motion to suppress." *Leedy*, 65 M.J. at 213.

### 3. Law

The Fourth Amendment is predicated on "[t]he right of the people to be secure in their persons, houses, papers, and effects" and provides safeguards against "unreasonable searches and seizures" by requiring warrants to be supported by probable cause and to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The military has implemented the Fourth Amendment through the Military Rules of Evidence [Mil. R. Evid.] 311–17. *Hoffmann*, 75 M.J. at 123. Military Rules of Evidence 315(f)(1) and 316(c)(5)(A) provide that a seizure made pursuant to a search authorization, "must be based upon probable cause." *See also United States v. Hester*, 47 M.J. 461, 463 (C.A.A.F. 1998). "[P]robable cause determinations are inherently contextual, dependent upon the specific circumstances presented as well as on the evidence itself[,]" and are "founded . . . upon the overall effect or weight of *all* factors presented to the [military] magistrate." *Leedy*, 65 M.J. at 213 (emphasis in original); *see also Gates*, 462 U.S. at 232 (observing that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts").

For there to be probable cause, a sufficient nexus must be shown to exist between the alleged crime and the specific item to be searched. *See Rogers*, 67 M.J. at 166; *United States v. Gallo*, 55 M.J. 418, 421 (C.A.A.F. 2001) (stating that the probable cause "definition encompasses showing a nexus"). "The question of nexus focuses on whether there was a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *United States v. Clayton*, 68 M.J. 419, 424 (C.A.A.F. 2010) (quoting *Leedy*, 65 M.J. at 213). A nexus may "be inferred from the facts and circumstances of a particular case[,]" including the type of crime, the nature of the items sought, and reasonable inferences about where evidence is likely to be kept. *Id.*; *accord Gallo*, 55 M.J. at 421. "Probable cause deals with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *United States v. Carter*, 54 M.J. 414, 418 (C.A.A.F. 2001) (cleaned up). To decide whether probable cause exists, the military magistrate "is free to draw 'reasonable inferences' from the material supplied by those applying for the authority to search." *Hoffman*, 75 M.J. at 125 (quoting *Gates*, 462 U.S. at 240).

In addition to being supported by probable cause, each warrant "must particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. This particularity requirement "is a defining aspect of search and seizure law." *United States v. Richards*, 76 M.J. 365, 369 (C.A.A.F. 2017).

> The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Id.* at 369 (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)) (internal quotation marks omitted). "'The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings.'" *Id.* (quoting *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999)). "'[I]t also serves to prevent circumvention of the requirement of probable cause by *limiting the discretion of officers executing a warrant to determine the permissible scope of their search.*'" *United States v. Eppes*, 77 M.J. 339, 347 (C.A.A.F 2017) (emphasis in original) (quoting *United States v. Sims*, 553 F.3d 580, 582 (7th Cir. 2009)). "The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *United States v. Morales*, 77 M.J. 567, 574 (Army Ct. Crim. App. 2017) (citation omitted).

While preserving the particularity requirement in search warrants is important, federal law recognizes the need for balance, allowing reasonable flexibility in searching electronic devices. *Id.* The prohibition against general searches should not be confused with a requirement for exact prior knowledge of the evidence's location and of the content of the evidence, instead, "[t]he proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation." *Id.* (internal quotation marks omitted) (citation omitted). "[I]t is folly for a search warrant to attempt to structure the mechanics of the search and a warrant imposing such limits would unduly restrict legitimate search objectives." *Id.* (alteration in original) (citation omitted). Rather than imposing rigid guidelines on searching electronic devices, courts evaluate what is reasonable under the specific circumstances of each case, with reasonableness being the gold standard under the Fourth Amendment. *Id.* (citation omitted). "The reasonableness of a search evolves as the search progresses and as the searching officer learns more about the files on the device that he or she is searching." *Shields*, 83 M.J. at 232 (internal quotation marks omitted) (citation omitted).

The application of the Fourth Amendment is further complicated by the constant evolution of digital devices and personal electronic communication devices. When considering cell phones, the Supreme Court, in *Riley v. California*, stated,

"modern cell phones . . . are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy. . . [as] a significant majority of American adults now own such phones." 573 U.S. 373, 385 (2014). When discussing cell phones, such as the one possessed by the appellant in *Riley*, the Supreme Court further noted that modern phones are "in fact minicomputers" that have "immense storage capacity" allowing them to store "thousands of pictures, or hundreds of videos." *Id*. at 393-94. The Supreme Court's conclusion is equally forceful:

> [m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life." The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought.

*Id*. at 403 (citation omitted).

Where a court concludes that a search was unlawful, Mil. R. Evid. 311(a)(3) provides that such evidence is inadmissible if its exclusion, "results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system." Military Rule of Evidence 311, however, also includes exceptions to the exclusionary rule. The good faith exception in Mil. R. Evid. 311(c)(3) provides the results of a search authorization "will not require exclusion if: (1) the magistrate had authority to grant the request; (2) the magistrate had a substantial basis for finding probable cause; and (3) law enforcement reasonably and in good faith relied on the authorization." *United States v. Blackburn*, 80 M.J. 205, 211 (C.A.A.F. 2020) (citation omitted).

The third element, which is at issue in this case, turns on "whether the search authorization was facially defective or whether the police knew the magistrate simply rubber-stamped it." *Id*. at n.5 (citing *United v. Carter*, 54 M.J. 414, 421 (C.A.A.F. 2000)).[5]

> The test is whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances. This standard takes into account the officer's training and experience, but not his or her

---

[5] In *Carter*, the Court of Appeals for the Armed Forces [CAAF] stated that Mil. R. Evid. 311(b)(3) did not establish a more stringent rule with respect to the good faith exception than the Supreme Court announced in *Leon* and held the three prongs of the good faith exception in Mil. R. Evid. 311(b)(3) addressed the same exceptions noted in *Leon*. 54 M.J. at 421.

> subjective intent. In application, the good faith exception
> applies to conduct involving only simple, isolated
> negligence, but not to conduct amounting to a deliberate,
> reckless, or grossly negligent disregard of Fourth
> Amendment rights. The good faith exception recognizes
> that the exclusionary rule cannot be expected, and should
> not be applied, to deter objectively reasonable law
> enforcement activity.

*Morales*, 77 M.J. at 576 (internal quotation marks omitted) (citations omitted).

### 4. Discussion

#### a. Probable Cause to Search the Camera Roll

Appellant asserts the search authorization lacked particularity and that there was no probable cause to search the stored images on his cell phone's camera roll. Regarding probable cause, appellant argues that SA ■■■ affidavit failed to provide a sufficient nexus between the messages on the Whisper application and the camera roll of the cell phone.

Affording the military magistrate appropriate deference, we find he had a substantial basis to issue the search authorization considering the information contained in the search and seizure authorization request, his related conversation with SA ■■, and a common sense understanding about the transmission of photographs via cell phone. Analogous to that discussed in *Riley*, appellant's cell phone, by itself, had the ability to serve both as the instrumentality of the crime and as a storage device for the fruit of that crime, specifically, relevant photographs sent through the Whisper application. The military magistrate understood that Whisper uploaded photographs similar to other cell phone applications, such that appellant could have uploaded photographs onto Whisper from other locations on the cell phone where photos are stored. The military magistrate further understood, based on the affidavit and attached Whisper messages, that the photos sent to Ms. ■ could have been taken prior to, but sent during, the 25 September to 12 October 2022 timeframe. This was a reasonable inference based on his common sense understanding and the information provided.

Therefore, in this age of "smart phones," SA ■■■ probable cause affidavit established a sufficient nexus between the alleged crime in this case and, the specific items to be seized. It stated that appellant sent photographs, including sexually explicit ones, through the Whisper messaging app and indicated the Whisper application could be accessed from mobile devices having internet access, such as appellant's cell phone, where digital files stored within a digital device can quite often be recovered. Based on the totality of the circumstances, and applying

his common sense understanding that the Whisper application operated similar to other cell phone applications, the military magistrate had a substantial basis to conclude probable cause existed to search appellant's cell phone in places beyond the Whisper application where images may have been stored, to include the camera roll.

While the search authorization did not contain a temporal limitation as to the photographs, such a limitation "is by no means a requirement" when the authorization is already sufficiently particularized. *Richards*, 76 M.J. at 370. In appellant's case, we find the search authorization was already sufficiently particularized by limiting the search to text messages, photographs, and images *related to* the Whisper application messages between "Corn_Energy" and Ms. ██ It was further limited to where such items would be stored.

### b. The Search Authorization was not Overbroad

Appellant also argues the search authorization was facially overbroad. Specifically, SA ██ requested authorization to search and seize "personal electronic communication devices" for "communication *via* the Whisper application between [appellant] and an alleged 15yo female," whereas the military magistrate issued the search authorization "for photos, images and text messages *related to* communication via the Whisper application." (emphasis added). We disagree. Under appellant's argument, CID would only have been authorized to search for photos, images, and text messages within the Whisper application, which was no longer installed on appellant's phone. However, as discussed above, the military magistrate had a substantial basis to conclude the photos would exist in other places on the cell phone where photos and images would be stored, like the camera roll.

"Related" is defined as "connected in some way", or "having relationship to or with something else." *Black's Law Dictionary* (12th ed. 2024). Thus, a reasonable and common sense understanding of the search authorization did not limit the search solely to the Whisper conversation itself, but rather, authorized a search for evidence connected with the Whisper application exchange. The language aligned with the military magistrate's valid probable cause determination. Moreover, the military magistrate did not authorize the search for all data but limited the search to a discrete type of data—photos, images, and text messages— that were connected to a specific conversation between Ms. ██ and "Corn_Energy" during a specific timeframe.[6] Thus, the search authorization was not facially overbroad.

---

[6] Our holding is limited to the facts presented here and should not be interpreted to hold that an authorization with a broader scope, under different circumstances, would not be facially overbroad.

We also find that the execution of the search authorization was reasonable and did not constitute rummaging. Testimony from CID explained that the cell phone's data reflected the Whisper application had been previously installed on appellant's phone. Since the Whisper application was no longer present, SA ■ testified he understood the search authorization allowed him to look through the images stored on appellant's cell phone for any of the five photographs sent via Whisper application chats at issue in this case—as those photos were *"related to"* the Whisper application communication. Appellant argues SA ■ should have used a filter to narrow the scope of the search. However, if the filter would have narrowed the scope of the search to the dates of the Whisper application messages, such a filter would have unduly restricted the legitimate search for the photographs, where there was probable cause that the photographs were not taken contemporaneous with the sending of the Whisper application messages—as demonstrated by appellant sending a photo of himself standing on a boat while he was purportedly on duty. Appellant further argues that the agents could have applied filters that searched for specific photos, and only those photos. But as our superior court has stated, "when it comes to cell phones and computers, although one search method may be objectively 'better' than another, a search method is not unreasonable simply because it is not optimal." *Shields*, 83 M.J. at 232.

Accordingly, we find that the approved search authorization was narrowly tailored, sufficiently balanced, and allowed for reasonable flexibility in searching appellant's cell phone for the five photos at issue. The search authorization adequately described the location to be searched and enabled CID to locate and identify the photos with reasonable effort, negating the probability that CID would exceed the scope of the authorization and search beyond which they were authorized. *See Morales*, 77 M.J. at 574. In other words, the military magistrate carefully tailored the search authorization so that a wide-ranging exploratory or overbroad search would not occur, authorizing CID to search and seize "photos, images, and text messages *related to* [appellant's] communications via the Whisper application and, thus, we find the requirements of the Fourth Amendment satisfied.

However, if this court found the search authorization to be insufficiently particularized or facially overbroad, we would conclude the military judge did not abuse her discretion in determining that the good faith exception to the exclusionary rule applied. A neutral and detached military magistrate was presented with an affidavit with well-developed and verifiable facts demonstrating a substantial basis for probable cause for approving and issuing the search authorization. The CID special agents involved in the investigation did not deliberately present false information, create a barebones affidavit, nor did they have any reason to believe it was improper for them to search for the five photographs within the camera roll. Thus, even if this court determined there existed a deficiency in probable cause or that the authorization's language was intolerably imprecise, the SAs reliance on and

execution of the search authorization fall precisely into the good faith exception set forth in *Leon*, 468 U.S. at 918-19, and Mil. R. Evid. 311(c)(3).[7]

### B. Whether Two Government Witnesses Commented on Appellant's Exercise of his Right to Remain Silent

Appellant argues that testimony from two CID special agents erroneously commented on his right to remain silent and request for counsel.

### 1. Additional Background

During the government's case-in-chief, trial counsel elicited the following testimony from SA ██, "What was his reaction when you showed him the search authorization?" Special Agent ██ replied, "He didn't really have much of a reaction. He was cooperative." Trial counsel then elicited additional testimony from SA ██, "So after this identification, what happened next?" Special Agent ██ replied, "So next, kind of came up with a game plan, as far as I'll talk to the defendant, myself. I volunteered to interview him . . . ." Trial counsel asked SA ██, "Did you all show this authorization to the accused?" Special Agent ██ replied, "Yes, Ma'am." Trial counsel then asked, "What reaction did he have, if any?" Special Agent ██ replied, "I don't recall a reaction." The defense did not object to any of these questions.

On appeal, appellant argues that eliciting the above testimony was improper. The testimony from SA ██, that appellant invoked his rights and requested counsel, highlighted for the panel members attention that appellant chose not to speak with law enforcement. Additionally, appellant also asserts that the respective testimony of the two SAs, regarding his "reaction" to being shown the search authorization was not relevant to any issue in the case.

### 2. Standard of Review

"Whether there has been improper reference to an accused's invocation of his constitutional rights [to remain silent] is a question of law that we review de novo." *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007) (citation omitted). When there are no objections at trial, however, this court reviews for plain error. *Id.*; *see also United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009). Under plain error

---

[7] Even if this court determined the good faith exception did not apply and suppressed the photos recovered from appellant's cell phone due to a Fourth Amendment violation, our determination on the issue would not be case dispositive. Even without the suppressed photos recovered from appellant's cell phone there is sufficient independent evidence, admitted through Ms. ██ at trial, to find appellant's convictions legally and factually sufficient and to establish appellant's guilt beyond a reasonable doubt.

review, appellant has the burden of demonstrating that: "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of [appellant]." *United States v. Rocha*, 84 M.J. 346, 349 (C.A.A.F. 2024) (internal quotation marks omitted) (quoting *United States v. Wilkins*, 71 M.J. 410, 412 (C.A.A.F. 2012)). "[A]n error is 'plain' when it is 'obvious' or 'clear under current law.' " *United States v. Warner*, 73 M.J. 1, 4 (C.A.A.F. 2013) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

### *3. Law*

It is constitutional error to admit evidence of an accused's post-apprehension silence as substantive evidence of guilt. *United States v. Alameda*, 57 M.J. 190, 199 (C.A.A.F. 2002); Mil. R. Evid. 301(f)(2). On the other hand, nontestimonial demeanor evidence does not trigger Fifth Amendment protections. *Pennsylvania v. Muniz*, 496 U.S. 582, 591-92 (1990); *United States v. Cook*, 48 M.J. 64, 65-66 (C.A.A.F. 1998).

### *4. Discussion*

For the reasons set forth below, we find it was not plain, clear, or obvious that SAs ▮ and ▮ commented on appellant's right to remain silent. If the testimony constituted either constitutional or evidentiary error, any such error was harmless beyond a reasonable doubt.

The testimony elicited in this case is similar to that elicited in *United States v. Pope*, 69 M.J. 328 (C.A.A.F. 2011). There, trial counsel elicited testimony from the Air Force investigator that the appellant was "lackadaisical" and "didn't care" when questioned about appellant's reaction on being informed of her positive drug test. *Id.* at 334. Defense counsel did not object to this testimony. *Id.* However, unlike in the present case, trial counsel also commented on appellant's reaction in closing argument. *Id.* Our superior court, under a plain error review, determined that because the comments at issue could be viewed as either nontestimonial demeanor evidence or as implicating appellant's right to remain silent, it was not "plain, or clear, or obvious" that the testimony commented on appellant's constitutional right to remain silent. *Id.* (quoting *Paige*, 67 M.J. at 449) (internal quotation marks omitted). While a closer question, it was also not obvious the comments violated the then Mil. R. Evid. 304(h)(3),[8] which provided that:

> [a] person's failure to deny an accusation of wrongdoing concerning an offense for which at the time of the alleged failure the person was under official investigation or was in

---

[8] The same approximate language is presently found in Mil. R. Evid. 304(a)(2). *See* Exec. Order 13,643, 78 Fed. Reg. 29,559, 29,563 (May 15, 2013).

> confinement, arrest, or custody does not support an
> inference of an admission of the truth of the accusation.

*Pope*, 69 M.J. at 334 (quoting Mil. R. Evid. 304(h)(3)) (internal quotation marks omitted).

Like *Pope*, the testimony at issue in appellant's case was minor within the context of the entire trial. *See id.* (citing *Moran*, 65 M.J. at 187-88). Further, since the defense counsel did not object at trial, it is not plain or obvious that the testimony was a comment on appellant's right to remain silent. However, even if it was error, any such error was not prejudicial.[9] We note that that unlike *Pope*, the trial counsel did not use the now objected to testimony in closing argument. *See id.* Moreover, based on the overwhelming evidence presented at trial, we are convinced that the testimony was not a factor in obtaining appellant's conviction.

### C. Whether the Military Judge Reversibly Erred in Instructing the Members

#### 1. Additional Facts

The military judge's findings instructions contained two errors, which involved the "Credibility of Witnesses" and the "Witness Opinion on Credibility or Guilt" instructions.[10] First, when the military judge instructed the panel on the "Credibility of Witnesses," she improperly included the provision, "[y]ou may consider this evidence in determining the *believability of the accused*," when in fact, appellant did not testify at trial. Second, when the military judge instructed on "Witness Opinion on Credibility or Guilt," she improperly worded the provision to state, "you may not consider this as evidence that a *crime did not occur*."

When the military judge discussed preparation of the proposed panel instructions with counsel, she stated on the record:

---

[9] We have also carefully considered appellant's claim, made during oral argument, that the harm of this error was further compounded by the military judge's instructional error, discussed *infra*. As we find appellant waived appellate review as to instructional error, we find the cumulative error doctrine inapplicable in this instance.

[10] Notably, both instructions deviated from the Military Judge's Benchbook. While the Benchbook is not a source of law, it represents a snapshot of the prevailing understanding of the law among the trial judiciary, as it relates to trial procedure. *See United States v. Riley*, 72 M.J. 115, 122 (C.A.A.F. 2013) ("the Benchbook is not binding as it is not a primary source of law, [rather] the Benchbook is intended to ensure compliance with existing law."); *see also* Dep't of Army Pam. 27-9, Legal Services: Military Judges' Benchbook, Foreward (29 Feb. 2020) [Benchbook].

> You all can receive a copy of the proposed panel member instructions, as well as the proposed findings worksheet. It is now 10:15. Please review both documents thoroughly and inform the court if there's any issues or concern. We will have an [Rule for Courts-Martial [R.C.M.]] 802 session at 11:30 and then, at that point, I can revisit any questions or concerns about the findings worksheet or the panel member instructions.

Following the corresponding R.C.M. 802 conference, the military judge indicated on the record that she "reviewed the panel member instructions and finding worksheet with both defense counsel and government counsel." Both counsel affirmatively responded the military judge accurately accounted for the R.C.M. 802 session. The military judge then allowed government counsel to place their objection to an evidentiary instruction on the record. The military judge then indicated, "[a]nd as the court noted earlier your objection is overruled."

The military judge then asked the defense "is there any objection to the Findings *Worksheet*?" (emphasis added). The defense responded, "No, Your Honor." The military judge did not specifically ask defense counsel whether they objected to any of her proposed *instructions*.[11] The military judge, however, directed the findings instructions be marked as an appellate exhibit, asked both counsel if they had a copy, and then asked if "there [were] any additional matters to address before we call members?" The defense responded, "No. Your Honor." After she finished reading the procedural instructions to the panel, the military judge asked, "Defense Counsel, any objection to [the] instructions I gave?" The defense affirmatively responded, "No, Your Honor." The military judge then asked the defense, "Do you have any additional instructions[?]" Again, the defense affirmatively responded, "No, Your Honor."

On appeal, appellant argues that these last two queries applied only to objections to the procedural instructions and not to the findings instructions, thereby preserving plain error review. Additionally, appellant argues that the military judge committed reversible error in her instructions on the "Credibility of Witnesses" and "Witness Opinion on Credibility or Guilt," and that these two instructional errors, when considered in conjunction with the SA's testimony discussed in B above, particularly the issue of his "believability," highlighted facts that commented on his exercise of his rights to remain silent. Lastly, appellant argues that the military judge's erroneous instruction regarding witness comments on credibility or guilt

---

[11] It is standard practice for a military judge to ask counsel, outside the presence of the panel members, whether there are any objections to the instructions or requests for additional instructions. *See generally* Benchbook, para. 2-5-8.

improperly shifted the burden of proof when the military judge instructed the panel it "may not consider [such evidence] as evidence that a crime *did not occur*."

### 2. Standard of Review

This court considers "the issue of waiver as a question of law under a de novo standard of review." *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019) (citing *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005)) (internal quotation marks omitted).

### 3. Law

Our superior court has held, when a military judge asks defense counsel if they have objections or requests for additional instructions and counsel answer, "No, Your Honor," this response "expressly and unequivocally acquiesce[es]" to the military judge's instructions, constituting waiver of "all objections to the instructions." *United States v. Davis*, 79 M.J. 329, 330-31 (C.A.A.F. 2020) (internal quotation marks omitted) (citations omitted). "When . . . an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citation omitted).

### 4. Discussion

We find appellant waived any objection to the military judge's instructions. Defense counsel failed to raise concerns or issues with the proposed panel instructions, despite having over an hour to read and review the draft panel instructions prior to the R.C.M. 802 session. Defense counsel then stated "No, Your Honor" when asked if they had any additional matters to address before the military judge called the members and read the findings instructions. Then, defense counsel responded "No, Your Honor," when asked both if they had any objections and if they had any additional instructions after the military judge provided both the findings and procedural instructions to the panel members.

As such, we find appellant expressly and unequivocally acquiesced to the military judge's instructions, and thus, waived any objection to the instructions on appeal. Even if this court did not find waiver and determined the military judge committed error, we are convinced appellant suffered no prejudice.

### D. Legal and Factual Sufficiency

On appeal, appellant argues that the evidence is legally and factually insufficient to sustain the findings of guilt for all charged offenses. First, appellant argues the government failed to prove beyond a reasonable doubt that he was "Corn_Energy." Appellant also argues there is insufficient evidence to sustain his

conviction for attempting to receive child pornography because there was no evidence of an attempt beyond solicitation and the chat messages did not constitute a substantial step to complete the attempt. Finally, appellant alleges that his request for nude photographs did not meet the definition of child pornography, and the chat messages were protected under the First Amendment, which, appellant also argues renders his conviction for solicitation of the wrongful distribution of child pornography similarly legally and factually insufficient.

*1. Standard of Review*

This court reviews issues of legal sufficiency de novo. *United States v. Robinson*, 77 M.J. 294, 297 (C.A.A.F. 2018) (citation omitted). Further, this court's assessment for both legal and factual sufficiency "is limited to the evidence presented at trial." *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

Evidence is legally sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Robinson*, 77 M.J. at 297-98 (internal quotation marks omitted) (citation omitted). Because we must draw "'every reasonable inference from the evidence of record in favor of the prosecution' . . . 'the standard for legal sufficiency involves a very low threshold to sustain a conviction.'" *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (first quoting *Robinson*, 77 M.J. at 298; and then quoting *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

We review questions of factual sufficiency "upon request of the [appellant]" and if appellant "makes a specific showing of a deficiency in proof." UCMJ art. 66(d)(1)(B)(i). Once these conditions are met, this court "may weigh the evidence and determine controverted questions of fact" subject to "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and . . . appropriate deference to findings of fact entered into the record by the military judge." UCMJ art. 66(d)(1)(B)(ii), (I)-(II). If this court is "clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding." UCMJ art. 66(d)(1)(B)(iii). For this court to be "clearly convinced that the finding of guilty was against the weight of the evidence," this court first "must decide that the evidence, *as the [court] has weighed it*, does not prove that appellant is guilty beyond a reasonable doubt. Second, the [court] must be clearly convinced of the correctness of this decision." *United States v. Harvey*, 85 M.J. 127, 132 (C.A.A.F. 2024) (cleaned up).

*2. Law*

To prove an attempt to commit the sexual abuse of a child involving indecent communication and the intentional exposure of his genitalia, and an attempt to knowingly and wrongfully receive child pornography, the government had to prove, beyond a reasonable doubt, that appellant, as "Corn_Energy," committed the following elements: (1) that appellant did a certain overt act, (2) that the act was done with the specific intent to commit a certain offense under the UCMJ, (3) that the act amounted to more than mere preparation, and, (4) that the act apparently tended to effect the commission of the intended offense. *See* UCMJ art. 80 (elements of attempt).

The underlying offense of the receipt of child pornography, as charged, required appellant to knowingly and wrongfully receive child pornography and that under the circumstances, the conduct was of a nature to bring discredit upon the armed forces. *See* UCMJ art. 134. "Child pornography" is defined as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *Manual for Courts-Martial, United States* (2019 ed.) [*MCM*], pt. IV, ¶ 95.c.(4). The term "sexually explicit conduct" means, in relevant part, a "lascivious exhibition of the genitals or pubic area of any person." *MCM*, pt. IV, ¶ 95.c.(10).

To prove the solicitation of another to commit the distribution of child pornography, the government had to prove beyond a reasonable doubt: (1) that appellant solicited or advised a certain person or persons to commit a certain offense under the UCMJ, and (2) that appellant did so with the intent that the offense actually be committed. UCMJ art. 82. The underlying offense for the solicitation here required appellant to solicit another person to knowingly and wrongfully distribute child pornography in violation of Article 134, UCMJ.

*3. Discussion*

For the reasons set forth below, we find the evidence legally and factually sufficient. We begin our analysis with the two "triggers" of our factual sufficiency review. Given the evidence of the sexually explicit and graphic Whisper application conversation that occurred on 6 October 2022 between Ms. ██ and "Corn_Energy," contained in the record, in conjunction with appellant's alleged deficiencies of proof, we find that appellant satisfied the requirements triggering this courts factual sufficiency review.

*a. Government Proved Beyond Reasonable Doubt that Appellant was
"Corn_Energy"*

Appellant argues that the government failed to prove beyond a reasonable doubt that he was the person messaging Ms. ██ as "Corn_Energy," pointing to a lack of connection between him and "Corn_Energy," a lack of evidence he engaged in similar conduct, uncertainty in where the photos originated, and doubt as to whether or not the Whisper application was ever installed on appellant's cell phone. Ms. ██ testified that "Corn-Energy" provided her detailed information that included his age, time in service, drill sergeant position, where he worked, and that he drove a black Ford F-150 truck, all of which closely aligned with appellant's enlisted record brief that was admitted into evidence at trial. She subsequently identified appellant during her testimony at trial as the same individual depicted in the photos that she received via the Whisper application.

During her testimony, Ms. ██ testified about the graphic, highly sexualized conversation, and photographs that the appellant sent her through the Whisper application, including appellant's request that she send him a nude photo of herself, after she identified herself as a fifteen-year-old minor. She then reviewed and verified the copies of screenshots that she made of the Whisper application messages and five photos she received from appellant that were subsequently admitted into evidence without objection from the defense. This evidence corroborated Ms. ██ testimony, specifically appellant's request that she send him a "nude" photo, a "selfie," and "pop a tit" for him. Three photographs that appellant sent to Ms. ██ via the Whisper application clearly showed his face, which also resulted in a special agent recognizing and identifying him during the investigatory stages, having served with him previously. A fourth photo reflected a partially concealed individual wearing a PT vest with the letters "AM" at the end of the nametape, exposed genitalia, and a partial right forearm tattoo that closely resembled appellant's tattoo in the boat photo, all of which reflected strong circumstantial evidence implicating it was appellant. The fifth photograph, depicting a male exposing his genitalia was the only photograph not to show the identity of the individual.

Criminal Investigation Division special agents also verified that appellant did indeed drive a black 2022 Ford F-150 truck that was referenced in the Whisper application communications between Ms. ██ and "Corn_Energy," which further provided corroboration that appellant was "Corn_Energy." Special Agent VR testified that in conducting the digital extraction of appellant's cell phone, he found remnants that the Whisper application had been installed on appellant's cell phone at one point but had since been removed. Additional corroborating evidence was SA ████ testimony that he found four photos, which he also reviewed and verified, in appellant's cell phone camera roll that matched four of the five photos that were sent to Ms. ██ through the Whisper application, specifically the photos of appellant on the boat and in the gym, as well as the two photos of exposed genitalia. However,

even if we were to exclude the evidence of the photos found on appellant's cell phone, relevant to the motion to suppress discussed above, we would still be clearly convinced that the remaining evidence admitted a trial proved beyond a reasonable doubt that the appellant was "Corn_Energy."

  *b. Government Proved Beyond a Reasonable Doubt that Appellant Attempted to Receive Child Pornography and Solicit Ms. ■ to Distribute Child Pornography*

Appellant argues the proof of the attempted receipt of child pornography is legally insufficient.[12] Appellant argues that the specification relied solely upon the request of appellant to persuade Ms. ■ to send him nude photos, arguing that such solicitation does not satisfy the more than mere preparation element nor constitute a substantial step; and further, that the solicited photos do not meet the applicable definitions of child pornography and is therefore free speech constitutionally protected by the First Amendment, thereby rendering the conviction for the attempted receipt of child pornography legally insufficient. Thus, there are two key questions. First, whether the manner of appellant's solicitation advanced sufficiently beyond mere preparation to become an attempt. Second, whether appellant's request for nude photos is legally and factually sufficient to sustain a conviction for attempting to receive child pornography and the solicitation of distributing child pornography.[13]

Regarding the first question, whether the appellant's solicitation advanced sufficiently beyond mere preparation, appellant relies upon *United States v. Gomez*, 15 M.J. 954 (A.C.M.R. 1983). There, the court found that "criminal intent, by itself, does not constitute a crime but rather some form of *actus reus* must accompany the intent." *Id.* at 966. To prove attempt, the act must amount to more than preparation and tend to effect the commission of the intended constitute at least the beginning of its effectuation. *See* UCMJ art. 80.

> [W]hat constitutes a "substantial step" towards the commission of criminal attempt . . . [is] conduct which is strongly corroborative of the firmness of the defendant's

---

[12] The government also concedes that the evidence is legally insufficient. However, this court is not bound to accept a government concession on appeal. *United States v. Hand*, 11 M.J. 321, 321 (C.M.A. 1981) (citing *United States v. McNamara*, 7 U.S.C.M.A. 575, 23 C.M.R. 39 (1957)).

[13] Appellant also alleges that the messages were protected speech under the First Amendment. However, because we conclude that appellant's request was for child pornography, it is not protected speech under the First Amendment. *See New York v. Ferber*, 458 U.S. 747, 764-65 n.18 (1982) (holding that child pornography is not protected by the First Amendment).

> criminal intent. The difference between mere preparation
> and forward movement toward commission of the crime is
> consistently one of fact, not law. Almost all acts short of
> the actual commission of the crime can be said to constitute
> preparation of some sort. In resolving the factual question,
> the issue is whether the acts of preparation, when coupled
> with the requisite intent, have reached a point at which they
> pose a danger to society which should be recognized.

*Gomez*, 15 M.J. at 966 (citations omitted). As our superior court stated in *United States v. Schoof*, there is an "elusive" line separating mere preparation from a substantial step and there is no "litmus test" for determining whether a substantial step exists. 37 M.J. 96, 103 (C.M.A. 1993) (citation omitted).

Contrary to the appellant's argument, we find the manner and nature in which he solicitated Ms. ██ constituted a substantial step beyond mere preparation. The appellant clearly knew he was chatting with someone he believed to be a fifteen-year-old on the Whisper application, proceeded to have a sexually explicit conversation that also included him sending her two sexually explicit photos of his genitalia, and he requested she send him a "nude," photo, a "selfie," and to "pop a tit" for him. An instantaneous offense,[14] the solicitation was complete immediately after appellant requested the aforementioned photographs with an intent to influence Ms. ██ to send him a "photo" or "photos" that would constitute the commission of the crime of distribution of child pornography. The appellant messaged Ms. ██ sexually explicit messages via the Whisper application that discussed the various sexual acts appellant would perform with Ms. ██ and exchanged mutual photos including appellant sending two photos of his genitalia. Upon receiving two pictures from Ms. ██, there would be little doubt that appellant believed she would act further in accordance with his solicitation, and this belief that the potential distribution of child pornography would occur, corroborated an intent that advanced beyond the "mere preparation stage."

Turning to the second question, whether the requested images meet the definition of child pornography in order to sustain the conviction for the attempted receipt of child pornography and solicitation of distribution of child pornography, we turn to our superior court's holding in *United States v. Ozbirn*, 81 M.J. 38 (C.A.A.F. 2021), a case directly analogous to the facts in this case. In *Ozbirn*, Airman First Class (A1C) Ozbirn was similarly charged and convicted for the

---

[14] *See* Article 82, UCMJ (explanation) (2019). The offense is complete when a solicitation is made or advice is given with the specific wrongful intent to influence another or others to commit any offense under the UCMJ. It is not necessary that the person or persons solicited or advise agree to or act upon the solicitation or advice.

attempted receipt of child pornography in violation of Article 80, UCMJ, based upon messages he exchanged with adults posing as minor girls. *Id*. at 40. Airman First Class Ozbirn engaged in sexually explicit conversations, which also included requests for them to send him naked photos of themselves. *Id*. at 40-41. The members found A1C Ozbirn guilty of attempting to receive child pornography. *Id*. at 41. The sole issue on appeal in *Ozbirn* was "[w]hether the evidence that [a]ppellant asked for 'naked pictures' from adults pretending to be minors was legally sufficient to sustain a conviction for attempted receipt of child pornography." *Id*. at 39 (first alteration in original). After considering the "totality of the circumstances in which [a]ppellant requested naked pictures," the CAAF answered the question in the affirmative and affirmed the conviction for attempted receipt of child pornography. *Id*. at 39, 42-43.

Like A1C Ozbirn, appellant argues the evidence was not legally sufficient to prove beyond a reasonable doubt that he had the specific intent to commit the attempted offense of knowingly and wrongfully receiving child pornography. Appellant asserts that the only evidence he engaged in an attempt to receive child pornography was evidence that "Corn_Energy" requested Ms. ▆ send a "nude photo." Further, appellant contends the request for a "nude photo" did not constitute a request for "child pornography," as defined by the Manual for Courts-Martial. In *Ozbirn*, CAAF stated:

> [t]he question of what a person specifically intended at a particular time is a question of what thoughts the person actually had in his or her head at the time. . . . a person's specific intent generally can be determined . . . by drawing inferences from the person's statements and actions and from the context and circumstances. Inferring a specific intent may be difficult in some cases, but that is not always so.

*Id*. at 42.

As CAAF subsequently held in *Ozbirn*, "the specific intent required for an offense 'may be inferred from the totality of circumstances' including 'the nature, time, or place of' appellant's 'acts before and during' the crime alleged." *Id*. at 42-43 (quoting *United States v. Webb*, 38 M.J. 62, 69 (C.M.A. 1993)). Despite his contention that he only asked for a "nude" photo, a "selfie," and that Ms. ▆ "pop a tit" for him, appellant made the request in the midst of a graphic in nature and highly sexualized conversation via the Whisper application, sent photos of his genitalia and believed at the time he was speaking to a minor, all of which provides context for his requests. Accordingly, we conclude under the totality of the circumstances appellant had the requisite specific intent to receive photos that were

both "obscene" and that included a "lascivious exhibition of the genitals or pubic area."

Accordingly, we find appellants' convictions both legally and factually sufficient.

**CONCLUSION**

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.[15]

Chief Judge FLOR and Senior Judge POND concur.

Senior Judge POND, concurring:

I concur with my colleagues in the resolution of appellant's appeal. I write separately because, in light of Congress's amendment to Article 66, UCMJ, I respectfully question whether the broad language in *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020), warrants reconsideration or clarification. "Waiver is serious business. It extinguishes rights of an accused, forever banishing waived legal issues from the purview of any appellate court." *United States v. Hardy*, 77 M.J. 438, 445 (C.A.A.F. 2018) (Ohlson, J., dissenting) (citation omitted). As we sit, the Courts of Criminal Appeals (CCAs) have little discretion but to find waiver in cases such as this under *Davis* without regard to the nature of the instruction; whether the specific instruction at issue was proposed by the defense or discussed with particularity by the parties; or the existence of some additional indicia of a deliberate decision to waive the error, when the responsibility of providing appropriate instructions rests with the military judge.

To be clear, even if this court were to apply forfeiture rather than waiver, under a plain error review, I would find no prejudice to appellant in light of the nature of the errors and considering the military judge's instruction as a whole. But the application of *Davis* raises a concern. When *Davis* was decided, this court in conducting its review under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 [UCMJ], had the discretion to pierce waiver to address an error raised for the first time on appeal. *See United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (stating CCAs possessed the authority under Article 66, UCMJ, "to determine whether to leave an accused's waiver intact, or to correct the error."). Following *Davis*, however, Congress amended Article 66, UCMJ, thereby removing the statutory basis for the CCA's discretion to notice waived errors of law. National Defense Authorization Act for Fiscal Year 2021, Pub. L. 116-283, § 542(b)(1)(A),

---

[15] The Entry of Judgment is amended to reflect that the Statement of Trial Results is dated "29 November 2023."

134 Stat. 3388, 3661-62 (1 Jan. 2021) [hereinafter "NDAA"]. This change to the scope of our appellate review combined with the holding in *Davis*— treating a general "no objection" as waiver of "*all* objections to the instructions," 79 M.J. at 329 (emphasis added)—has, in essence, extinguished plain error review for instructional errors and significantly restrained this court's ability to address such errors. Consistent with *United States v. Allbery*, I respectfully suggest that this issue may warrant reconsideration or clarification by our superior court. 44 M.J. 226, 228 (C.A.A.F. 1996) (holding if a service level appellate court believes the underlying logic of one of the decisions of the Court of Appeals for the Armed Forces [CAAF] has changed, its recourse is "to express that viewpoint and to urge . . . reconsideration of . . . precedent").

The facts of this case are not meaningfully distinguishable from the facts in *Davis*. In *Davis*, the military judge explained to the parties what instructions he planned to give the panel members. 79 M.J. at 330. Here, in appellant's case, the military judge provided both parties a copy of her proposed instructions, gave the parties over an hour to review them as well as an opportunity during the Rule for Courts-Martial [R.C.M.] 802 conference to specifically raise any questions or concerns about those instructions.[16] While we do not know the full substance of

---

[16] The Discussion to R.C.M. 920(c) states, "Requests for and objections to instructions should be *resolved* at an Article 39(a) session." (emphasis added) (citation omitted). The Rules for Courts-Martial, however, do not prohibit *discussing* instructions during an R.C.M. 802 conference. Such conferences are intended to allow the military judge to "consider such matters as will promote a fair and expeditious trial." R.C.M. 802(a). And while the purpose is "not to litigate or decide contested issues[,]" on occasion, "it may be appropriate to resolve certain issues, in addition to routine or administrative matters, if this can be done with the consent of the parties." R.C.M. 802(a) discussion. Any agreed upon matters, however, must be made part of the record. R.C.M. 802(b) (otherwise noting that R.C.M. 802 conferences need not be made part of the record). Additionally, R.C.M. 801(f) provides:

> All sessions involving rulings or instructions made or given by the military judge shall be made a part of the record. All rulings and instructions shall be made or given in open session in the presence of the parties and the members, except as otherwise may be determined in the discretion of the military judge.

Thus, the requirements of R.C.M. 920 and R.C.M. 801(f) are intended to ensure that discussions about instructions and any rulings are accurately reflected on the record.

(continued . . .)

those discussions, the parties agreed on the record that they indeed discussed the proposed instructions, to include, at the very least, the government's objection to one of the instructions, which was noted for the record. Thus, here, appellant was in the same, if not arguably a better position, than the appellant in *Davis*, having a written copy of what the instructions to the panel would be.

In *Davis*, the military judge asked defense whether it had any objections or requests for additional instructions, to which the defense answered it did not. *Id.* In *Davis*, before giving the instructions, the military judge inquired one more time whether defense had any objections, to which defense replied, "No, Your Honor."[17] *Id.* In appellant's case, after the parties discussed the instructions during a R.C.M. 802 conference (and following the government's objection to the instructions on the record), the military judge confirmed both parties had a copy of the written instructions in front of them and inquired whether "there [were] any additional matters to address before we call the members?" To this last question, the defense replied, "No, Your Honor." Before calling the members, the military judge did not explicitly ask defense, on the record, if there were objections to the instructions, but in the context of all the events leading up to this point, the military judge's final query about any additional matters that needed to be addressed, was an opportunity for defense, like the government, to voice any objections to the proposed instructions. Defense affirmatively declined stating, "No, Your Honor." Then, in the presence of the members, when the military judge inquired whether the parties had any objections or requests for additional instructions, just as the defense did in *Davis*, the defense again "expressly and unequivocally" said "No, Your Honor." *See id.* at 331.

Thus, the facts in appellant's case are not substantively different from the facts in *Davis*. The defense was informed of what the proposed instructions would be and subsequently stated "no objection" to those proposed instructions. *Id.* The CAAF held "[b]y 'expressly and unequivocally acquiescing' to the military judge's instructions, Appellant *waived all objections* to the instructions, including in regards to the elements of the offense." *Id.* (alteration added) (emphasis added) (quoting *United States v. Smith*, 2 C.M.A. 440, 442, 9 C.M.R. 70, 72 (1953); and

---

(. . . continued)
So, while not prohibited, the danger of discussing substantive matters, like instructions, at length during an R.C.M. 802 conference is the risk of failing to accurately and completely summarize those substantive matters. And a cursory summary will fail to adequately reflect the nature of any in-depth, substantive discussions for those later reviewing the record of trial.

[17] Rule for Courts-Martial 920(f) requires at least one of these colloquies occur outside the presence of the members. *See* Manual for Courts-Martial, United States (2019 ed).

further citing *United States v. Wall*, 349 F.3d 18, 24 (1st Cir. 2003), cert. denied, 541 U.S. 965 (2004)). Because I do not find a meaningful difference in the facts in appellant's case, we are bound to follow *Davis* to find waiver here.

But the record in *Davis*—unlike subsequent cases and cases upon which the holding relied—"was unclear whether the defense even contemplated" the instruction at issue." *United States v. Rich*, 79 M.J. 472, 477 (C.A.A.F. 2020). In *Rich*, decided less than three months later, the CAAF found "an even stronger case for waiver" where the military judge and counsel had several discussions about instructions, and the record reflected "that Appellant pondered the possibility of requesting a mistake of fact as to consent instruction, but ultimately made no such request." *Id.* at 477. The record reflected "a 'deliberate decision' to abandon the mistake as to consent instruction." *Id.*

The facts in *Rich* are aligned with the underlying facts in *United States v. Wall*, 349 F.3d 18, upon which the *Davis* holding in part relied. *Davis*, 79 M.J. at 331. In *Wall*, the defense counsel at trial, like the defense in *Davis*, "twice confirmed upon inquiry from the judge that he had 'no objection and no additional requests.'" *Wall*, 349 F.3d at 24. The First Circuit Court of Appeals found appellant had waived any right to object on appeal. *Id.* But significantly, the instructional language the appellant challenged in *Wall*, and the court found he had waived on appeal, was instructional language the defense counsel at trial had "requested and specifically approved." *Id.* at 24. Then, at a sidebar conference, defense counsel "directly bypassed an offered opportunity to challenge and perhaps modify the instructions" by twice stating "no objections" to the instructions he had specifically requested. *Id.* (nevertheless stating the court would inevitably find no constitutional error even if it did consider appellant's complaints).

The First Circuit recognized this distinction when applying *Wall* in subsequent cases. *See e.g.*, *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 112 (1st Cir. 2015) (stating litigant waived his right to object to an instruction he "affirmatively requested"); *Ellrich v. U.S. Bank Nat'l Ass'n*, 268 F. App'x 12, 13 (1st Cir. 2008) (finding waiver where there was no objection and counsel conceded that the breach of contract claim should be limited to a specific date, as instructed and later challenged on appeal); *see also Goulet v. New Penn Motor Express, Inc.*, 512 F.3d 34, 44 (1st Cir. 2008) (in addition to defense affirmatively stating it was satisfied with the instruction, "Goulet said nothing [at trial] about wanting a further [instruction] *along the lines he now requests*. The argument is therefore waived." (emphasis added) (citation omitted)); *see also United States v. Mitchell*, 85 F.3d 800, 807-09 (1st Cir. 1996) (finding waiver where there was a direct inquiry from the judge on the precise issue and an unequivocal assent from defense counsel).

Similarly, in *United States v. Smith*, 2 U.S.C.M.A. at 442, also upon which the *Davis* holding relied, the instructions at issue were the elements of the offense which

defense counsel "spelled out in detail" during his closing argument to the members. The presiding law officer (a precursor to the military judge), subsequently stated "[t]hose portions of the Manual for Courts-Martial 1949 and 1951 as were read by defense counsel correctly state the elements of proof." *Id.* When asked if defense had any further requests or desires, the defense replied that the law officer had "adequately covered the instructions in the case." *Id.* at 443. On appellate review, the court found the appellant had waived any deficiency in the instructions. *Id.* Like *Wall*, the instructions at issue in *Smith* were instructions the defense had essentially proposed. *Id.* at 441. I suggest that it is one thing to find waiver when the matter is specifically requested by or invited by the defense, as in *Wall* and *Smith*, or when the record reflects the instruction at issue was specifically discussed by the parties or at least contemplated but ultimately abandoned as in *Rich*.[18] It is a different matter altogether to construe a "no objection" to the instructions in general as waiving all objections to all of the instructions given, preventing further review on appeal. These important distinctions, however, were neither raised nor discussed in *Davis*.

In light of this court's recent changes to its statutory authority, the broad language in *Davis* raises an additional concern about the CCAs' ability to review instructional error when it no longer possesses the authority to pierce waiver. As previously noted, before recent amendments to the UCMJ, the CCAs had the unique authority to address errors raised for the first time on appeal (even if waived at trial) under the previous version of Article 66, UCMJ, charging the CCAs to review the entire record and affirm only so much of the findings and sentence that they found correct in law and fact and "'*should be approved*.'" *Chin*, 75 M.J. at 223 (emphasis added) (quoting 10 U.S.C. § 866 (2012). This "broad authority" under Article 66, UCMJ, acted "as a safety valve of last resort." *United States v. Conley*, 78 M.J. 747, 752 (Army Ct. Crim. App. 2019), pet. denied, 79 M.J. 134 (C.A.A.F. 2019); *see also United States v. Parker*, 36 M.J. 269, 271 (C.M.A. 1993) ("the [CCAs] are something like the proverbial 800-pound gorilla when it comes to their ability to protect an accused.").

After the CAAF decided *Davis*, however, Congress amended the UCMJ to specifically remove the "should be approved" language and, with it, this court's discretion to notice waived errors. NDAA, § 542(b)(1)(A); *see also United States v. Coley*, ARMY 20220231, 2024 CCA LEXIS 127, at *8-9 (Army Ct. Crim. App. 13 Mar. 2024) (mem. op.) (similarly concluding the 2021 amendment to Article 66(d),

---

[18] This is so even though, the military judge has the duty to sua sponte instruct on affirmative defenses reasonably raised by the evidence. *United States v. MacDonald*, 73 M.J. 426, 434 (C.A.A.F. 2014) (citing *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000)).

UCMJ, abrogated the CCAs' ability to pierce waiver as to errors associated with findings), *aff'd* __ M.J. __, 2025 CAAF LEXIS 407 (C.A.A.F. 27 May 2025).[19]

There was a small window during which CCAs used the legacy Article 66, UCMJ authority to notice errors that were otherwise waived under *Davis*. *See e.g.*, *United States v. Henderson*, 83 M.J. 735, 753 (Army Ct. Crim. App. 2023) (concluding, under *Davis*, "appellant's lack of objection to the military judge's findings instructions constitutes waiver" but given "the due process issues" raised by the instructional error, the appellate court exercised its Article 66, UCMJ, "should be approved" authority to notice the waived issue, finding error was not harmless beyond a reasonable doubt); *see also United States v. Rodriguez*, ARMY 20210213, 2022 CCA LEXIS 744, at *5-6 (Army Ct. Crim. App. 30 Dec. 2022) (mem. op) (applying *Davis* to conclude trial defense counsel affirmatively waived objection to the instructional error, but piercing waiver under Article 66, UCMJ, "should be approved" authority to find erroneous instructions were not harmless beyond a reasonable doubt), pet. denied, 83 M.J. 391 (C.A.A.F. 2023).

Beyond this small window, however, CCAs subsequently applied the broad language in *Davis* to invariably conclude that defense counsel's general acquiescence to the military judge's instructions resulted in waiver of all objections. *See e.g.*, *United States v. George*, No. ACM 40397, 2024 CCA LEXIS 224, at *2 (A.F. Ct. Crim. App. 7 Jun. 2024) (finding appellant waived right to appeal military judge's instruction on the elements of the offense, citing *Davis*), aff'd, 86 M.J. 38 (C.A.A.F. 2024) ; *United States v. Thompson*, No. 202100205, 2023 CCA LEXIS 15, at *4 n.10 (N-M Ct. Crim. App. 18 Jan. 2023) (military judge's failure to include the definition of "lewd act" in the instructions was waived in accordance with *Davis*, 79 M.J. at 331); *United States v. Ramirez*, ARMY 20210376, 2022 CCA LEXIS 667, at *19 (Army Ct. Crim. App. 16 Nov. 2022) (mem. op.) (stating "to the extent appellant is alleging that the military judge failed to properly instruct the panel on how they could use the transcript [admitted at trial], he expressly waived any such claim when defense counsel stated he had no objections to the military judge's proposed instructions." (citations omitted)), aff'd, 84 M.J. 173 (C.A.A.F. 2024);

---

[19] Under the amended version of Article 66(d)(1)(A), UCMJ, applicable to appellant's appeal, this court "may affirm only such findings of guilty as the Court finds correct in law, and in fact." 10 U.S.C. § 866(d)(1)(A) (2018 & Supp. II 2020). And as this court previously remarked "a case becomes 'correct in law' for purposes of our Article 66 review when a valid waiver applies to what would otherwise be prejudicial error" because "'a valid waiver extinguishes the claim of legal error.'" *Conley*, 78 M.J. at 749 (first quoting UCMJ art. 66; and then quoting *United States v. Ahern*, 76 M.J. 194, 197-98 (C.A.A.F. 2017); *see also Chin*, 75 M.J. at 222 (stating "as a general matter when an error is waived, the result is that there is no error at all and an appellate court is without authority to reverse a conviction on that basis.") (cleaned up)).

*United States v. Westcott*, No. ACM 39936, 2022 CCA LEXIS 156, at *40 (A.F. Ct. Crim. App. 17 Mar. 2022) ("Under *Davis*, the only conclusion available is that appellant waived the issue" by stating they had no objection to the military judge's instructions "[a]lthough the omission of the consent instruction was apparently due to the military judge's oversight—and the absence of a defense objection was the product of a similar oversight on trial defense's part"), *pet. denied*, 82 M.J. 438 (C.A.A.F. 2022).

After the amendment to Article 66, UCMJ, the consequence of *Davis* is that now if a defense counsel, after being informed of what the military judge's proposed panel instructions will be, affirmatively responds on the record that he or she has no objections and no request for additional instructions, this court then has no recourse to correct those errors absent a claim of ineffective assistance of counsel or a new rule of law. *See Davis*, 79 M.J. at 331 (noting courts will review a matter for plain error "when there is a new rule of law, when the law was previously unsettled, and when the [trial court] reached a decision contrary to a subsequent rule.'" (alteration in original) (quoting *United States v. Oliver*, 76 M.J. 271, 274 (C.A.A.F. 2017))). Consequently, plain error review of instructions is essentially dead. Either counsel objects to an instruction and the appellate courts review for an abuse of discretion or counsel acquiesces to the military judge's inquiry and appellate courts find all objections are waived. The issue is not whether waiver should apply; it plainly should when the record demonstrates a purposeful decision. Rather, the question is whether a general, formulaic colloquy should invariably waive all instructional error, regardless of context.

This bears further reflection because it is the military judge, not the parties, who bears the responsibility of properly instructing the panel members on the law. R.C.M. 801(5); R.C.M. 920(a). While any party may request the military judge instruct the members on the law as they put forward, it is the military judge's duty, not the parties', to determine which instructions are required and appropriate and to rule on objections and requests for additional instructions. R.C.M. 920(a), (c); *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) ("The military judge has an independent duty to determine and deliver appropriate instructions." (citation omitted)). "Irrespective of the desires of counsel, the military judge must bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law." *United States v. Graves*, 23 U.S.C.M.A. 434, 437, 1 M.J. 50, 53 (1975).

The military judge is selected and certified to serve in that role "by reason of education, training, experience, and judicial temperament." UCMJ art. 26(b). Thus, the military judge is usually, if not always, the most experienced person in the courtroom. Yet, as a consequence of *Davis*, the responsibility to ensure the correctness of the instructions is now borne by defense counsel, absent a change in

the law. An appellant may seek review of an instructional error through a claim of ineffective assistance of counsel. A meritorious claim of ineffective assistance of counsel, however, is not an easy bar to meet. To prevail, an appellant must show that his counsel's performance fell "*measurably below* the performance ordinarily expected of fallible lawyers." *United States v. Palik*, 84 M.J. 284, 289 (C.A.A.F. 2024) (emphasis added) (cleaned up); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (a claim of ineffective assistance of counsel requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.").

Consigning claims of instructional errors exclusively to the framework of ineffective assistance of counsel fundamentally changes the nature of appellate review. While the standards of plain error and ineffective assistance of counsel may be comparable, and sometimes, intertwined, *see e.g., United States v. Campos*, 67 M.J. 330, 333 (C.A.A.F. 2009) and *Wall*, 349 F.3d at 24-25, the two standards of review are not the same and, consequently, can result in different outcomes. *See United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017) (stating the two standards "do not necessarily generate identical outcomes with respect to the same alleged error."); *Swanson v. United States*, 692 F.3d 708, 717 (7th Cir. 2012) (stating "in some respects, plain error review may be less demanding."); *see also United States v. Bono*, 26 M.J. 240, 242 n.2 (C.M.A. 1988) ("We do not mean to imply that a finding of plain error will automatically equate to ineffective assistance of counsel."). As one federal court noted, in comparison to plain error, the ineffective assistance standard "does not involve the correction of an error *by the district court*, but focuses more broadly on the duty of counsel to raise critical issues for that court's consideration." *Carthorne*, 878 F.3d at 465 (emphasis added).

Judge Posner, writing for the Seventh Circuit, best articulated how an error may be plain but "needn't be blatant" or rise to the level of ineffective assistance of counsel:

> [W]e do not think, as the government argued, that the error must be plain in the further sense that it leaps out at the reader of the district court's decision—that it is obvious in the sense of a tyro's error, an error that only a first-year law student would have made, a ludicrous error, an error that condemns the lawyer who failed to bring it to the judge's attention of professional incompetence and the judge of judicial incompetence for having failed to notice it. If the plain-error doctrine were so confined it could almost never be invoked successfully, if only because it would be virtually coextensive with the doctrine of ineffective assistance of counsel. So, while the error must be straightforward, it can be so in hindsight. But it must be

sufficiently certain and sufficiently prejudicial that the trial judge and prosecutor were derelict in countenancing it.

*United States v. Caputo*, 978 F.2d 972, 975 (7th Cir. 1992) (citations omitted).

Thus, there may be situations where an instructional error at court-martial is plain and obvious and yet not rise to the level of defense counsel professional incompetence, especially given that the duty lies upon the shoulders of the judge, not counsel, to properly instruct the panel.

Our superior court has stated "there are no magic words to establish affirmative waiver" but rather "we look to the record to see if the statements signify that there was a 'purposeful decision' at play." *United States v. Gutierrez*, 64 M.J. 374, 377 (C.A.A.F. 2007) (quoting *United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999)). And I acknowledge that "'[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution.'" *United States v. Cook*, __M.J.__, 2025 CAAF LEXIS 726, at *9 (C.A.A.F. 28 Aug. 2025) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)); *see also United States v. Malone*, __M.J.__, 2026 CAAF LEXIS 62, at *9-10 (C.A.A.F. 20 Jan. 2026). But "'[t]he determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case . . . .'" *United States v. Elespuru*, 73 M.J. 326, 328 (C.A.A.F. 2014) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). And the colloquy which is now reflected in the Military Judge's Benchbook has in essence become magic, irrespective of the nature of the discussion about instructions on the record, rendering the word "forfeiture" in R.C.M. 920(f) relatively hollow.[20]

---

[20] Paragraph 2-5-9 of Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook (29 Jul. 2025), titled "Discussion of Findings Instructions" includes the following colloquy when the members are absent in the sample script:

MJ: I intend to give the following instructions: (using the Instructions Checklist at Appendix B, the judge generally accounts for the instructions). Does either side object to any of those instructions?

TC/DC: (Respond.)

MJ: What, if any, other instructions do the parties request?

TC/DC: (Respond.)

(continued . . .)

I do not mean to say that a short colloquy is never sufficient to waive a substantial right. Panel instructions, however, often cover numerous and varied legal standards, rules, and principles and are not short, but substantial in length. The instructions in appellant's case were over twenty pages long. And because the instructions fall within the ambit of the military judge's duties and responsibilities, the particular facts and circumstances governing waiver should extend beyond whether a defense merely articulates "no objection" to the instructions generally and take into consideration the circumstances as a whole. Such an abbreviated colloquy, alone and without more, is more indicative of an oversight by defense than a deliberate decision. *Campos*, 67 M.J. at 332 (C.A.A.F. 2009) ("A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." (internal quotation marks omitted) (citation omitted)). And without more, a general "no objection" now operates as a categorical waiver foreclosing this court's ability to review all instructions on appeal.

This predicament would appear to be contrary to the pronouncement in *United States v. Olano*, 507 U.S. 725 (1993), upon which *Davis* also relied. There, the Supreme Court stated, "'[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . the rules of fundamental justice.'" *Id.* at 743 (citation omitted). *Olano* involved a joint jury trial where one defense counsel unequivocally and affirmatively agreed to the judge's proposal to allow alternate juror members to be present during deliberations, but defense counsel for Olano remained silent. *See id.* at 728-29. The Supreme Court applied plain error rather than waiver, stating: "Although in theory it could be argued that 'if the question was not presented to the trial court no error was committed by the trial court, hence there is nothing to review.'" *Id.* at 733. But that, the Supreme Court determined, was not the theory adopted by Federal Rule of Criminal Procedure (Fed. R. Crim. P.) 52(b). *Id.* at 733-

---

(. . . continued)
Paragraph 2-5-15 includes the following colloquy, after the military judge has provided the instructions to the panel and when the members are present:

> MJ: Do counsel object to the instructions given or request additional instructions?
>
> TC/DC: (Respond.)
>
> MJ: Does any member of the court have any questions concerning these instructions?
>
> MBR: (Respond.)

34. That rule gives discretion to the federal appellate courts to review plain and obvious errors affecting an appellant's substantial rights when the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (alteration in original) (quoting *Olano*, 507 U.S. at 736).[21] The plain error doctrine in Fed. R. Crim. P. 52(b), the Supreme Court remarked, "tempers the blow of a rigid application of the contemporaneous-objection requirement." *United States v. Young*, 470 U.S. 1, 15, (1985). It also serves as a "careful balancing of our need to encourage *all trial participants* to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *Id.* at 15-16 (emphasis added) (internal quotation marks omitted) (citation omitted).

The military courts, however, have not adopted Fed. R. Crim. P. 52(b)'s standard of plain error. *United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998). Rather, "we created a military plain error doctrine because we concluded that the Supreme Court's doctrine was based on rules that do not apply to appellate courts within the military justice system." *United States v. Humphries*, 71 M.J. 209, 220 (C.A.A.F. 2012) (Stucky, J., dissenting). The CAAF concluded Article 59(a), UCMJ, created a higher threshold for overturning convictions by requiring the error to "*materially* prejudice the substantial rights of the accused," in contrast to Rule 52(b)'s prong that the plain and obvious error "affect substantial rights." *Id.* at 214 (citing *Powell*, 49 M.J. at 465). Additionally, the CAAF found Fed. R. Crim. P. 52(b)'s requirement that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings" only applied to courts exercising discretionary vice mandatory review authority. *Id.* at 221 (Stucky, J., dissenting) (citing *Powell*, 49 M.J. at 465). Thus, Fed. R. Crim. P. 52(b) does not apply to this court's review of courts-martial appeals.

Arguably, however, the previous version of Article 66, UCMJ, operated similarly to Fed. R. Crim. P. 52(b) governing Article III courts–allowing the CCAs to exercise their discretion to notice plain and obvious errors otherwise not subject to review if they affected the fairness of the proceedings. My concern is that now, when that discretion no longer exists, the application of the broad language in *Davis* requires the CCAs to let instructional errors go unnoticed in all cases. Appellant's only recourse is to ask this court to lay the blame at the feet of his trial defense counsel for failing to do the military judge's job when our decisions should be encouraging all trial participants to seek a fair and accurate trial.

Trial defense counsel could alternatively state a general objection to all of the military judge's instructions with the hopes of preserving at least a plain error

---

[21] The advisory notes state that the rule was "a restatement of existing law." *See* Fed. R. Crim. P. 52 advisory committee's note to subdivision (b) (citing in part to *Wiborg v. United States*, 163 U.S. 632, 658 (1896)).

review of the instructions. *See United States v. Payne*, 73 M.J. 19, 23 (C.A.A.F. 2014) (applying plain error where defense counsel "objected to all of the military judge's instructions"). But that approach raises concerns of candor and due diligence to the court. The CAAF's decision in *Payne*, however, raises another question: if courts apply plain error when there is a general objection to all the instructions, then why should a similar standard of review not apply when there is a general "no objection" to the same instructions.

I fully recognize that this court is bound by *Davis* and we apply it here. But the statutory landscape of our appellate review has changed. When Article 66, UCMJ formerly permitted CCAs to notice waived error, the consequences of a broad waiver rule were tempered by that discretionary authority. That safety valve, however, no longer exists. In cases where the record reflects only a general acquiescence to lengthy and complex panel instructions—and without more—the application of waiver may merit renewed examination. Respectfully, I suggest that plain error review may better account for both the military judge's independent duty to instruct as well as counsel's responsibilities to object, thereby preserving issues for appeal. In light of these considerations, I suggest to our superior court to consider that in those situations where "[t]owards the end of the trial, the military judge ask[s], 'Does either side have any objections to the instructions that I propose to give?'" and "[b]oth parties answer[] 'No.'" – and with that alone and nothing more – that "plain error is the proper lens for review." *United States v. Killion*, 75 M.J. 209, 218 (C.A.A.F. 2016) (Ohlson, J., dissenting).

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court